THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DONALD TONEY, Defendant-Appellant.

First District (1st Division) No. 1—97—2315

Opinion filed November 22, 1999.

Rita A. Fry, Public Defender, of Chicago (Timothy J. Leeming, Assistant Public Defender, of counsel), for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, Margaret J. Campos, and Barbara L. Jones, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE O'MARA FROSSARD delivered the opinion of the court:

Defendant, Donald Toney, appeals his convictions for first degree murder, attempted first degree murder, and aggravated discharge of a firearm. Codefendants Robert Foster and Frederick Luckett were tried by separate juries and are not involved in this appeal. On appeal, defendant contends that the trial court erred by (1) instructing the jury on felony murder with a predicate felony of aggravated discharge of a firearm; (2) failing to instruct the jury on the charged offense of intentional and knowing first degree murder and on the mitigating offense of second degree murder; (3) admitting two weapons into evidence; and (4) imposing consecutive sentences. The defendant also contends the State failed to prove the identity of the shooter beyond a reasonable doubt and denied him a fair trial with improper comments during closing arguments. We reverse and remand for a new trial.

## I. FACTS

At approximately 7 p.m. on the evening of October 10, 1995, Antoine Harris and his brother Terrance, members of the Four Corner Hustlers street gang, recognized defendant as he drove past Halsted east on 123rd Street. Luckett, defendant's younger brother, and Foster were passengers in defendant's car. All were members of the Gangster Disciples. A confrontation occurred during which at some point threats were yelled, Antoine threw a bottle at defendant's vehicle and shots were fired. Defendant remained in the car. Luckett and Foster got out of the car and fired their guns. Phillip Matthews died from gunshot wounds. Bobby Roberson, Terrance and Antoine were not injured. Antoine knew defendant and gave the police a description of the offenders and a location where defendant lived. Approximately one hour after the shooting, the police arrested defendant when Luckett's mother brought the defendant out of the house at 12320 South Carpenter. Luckett and Foster were also arrested near the same location. Antoine and Terrance identified defendant, Foster, and Luckett in a lineup. Antoine identified the rifle that Foster fired at him.

Defendant initially denied involvement in the shootings, but when Detective Baker showed defendant the two recovered weapons and told defendant that he and his car had been identified as involved in the shooting, defendant admitted his involvement. However, at trial, he denied any plan or intent to shoot Four Corner Hustlers and maintained the shootings were in self-defense. A forensic expert who examined the firearms evidence from the scene including 15 fired cartridge casings concluded the casings were consistent with the two recovered weapons; however, three fired bullets, including a .38-caliber bullet from the body of Phillip Matthews, were not fired from the two weapons fired by Luckett and Foster.

The jury found defendant guilty of the first degree murder of Philip Matthews, guilty of the attempted murder of Antoine Harris, Terrance Harris, and Bobby Roberson, and guilty of aggravated discharge of a firearm of Antoine Harris, Terrance Harris, and Bobby Roberson. The court sentenced defendant to prison terms of 35 years for the first degree murder conviction to run consecutive to the 18-year concurrent sentences imposed for the attempted murder convictions. Defendant's 10-year prison terms for aggravated discharge of a firearm were to run concurrent to each other and to the attempted murder sentences.

## II. JURY INSTRUCTIONS

### A. Felony Murder Instruction

■ ■ We review the trial court's decision regarding jury instructions under an abuse of discretion standard. *People v. Kidd*, 295 Ill. App. 3d 160, 167 (1998). Defendant argues that the trial court erred by instructing the jury on felony murder because the shootings were reasonable acts of self-defense and the evidence failed to show that the defendant planned or participated in a forcible felony during which Phillip Matthews was murdered. Defendant additionally argues that aggravated discharge of a firearm cannot serve as a predicate felony for a felony murder charge. In *People v. Dekens*, 182 Ill. 2d 247, 252 (1998), our supreme court noted that Illinois follows the proximate cause theory of felony murder. "Consistent with the proximate cause theory, liability should lie for *any* death proximately related to the defendant's criminal conduct." (Emphasis added.) *Dekens*, 182 Ill. 2d at 252. Thus, defendant is subject to the felony murder doctrine if the "decedent's death is the direct and proximate result of the defendant's felony." *Dekens*, 182 Ill. 2d at 252.

■ The State's theory was that Toney, together with Foster and Luckett, was the aggressor and the murder of Philip Matthews occurred as the result of Foster and Luckett shooting at Four Corner

Hustlers. The State's evidence established that defendant asked Luckett and Foster to accompany him to rival gang territory as "backup" and knew that Luckett and Foster brought guns with them. Defendant drove Luckett and Foster, armed with weapons, into rival gang territory. Defendant stopped his vehicle to allow Luckett and Foster to aim and shoot their guns at rival gang members. Foster and Luckett exited the vehicle and shot at several rival gang members. Defendant tried unsuccessfully to aid Foster and Luckett in leaving the scene of the shooting. Thus, there is evidence that the victim's death was a direct and proximate result of defendant's felonious conduct in aiding and facilitating Foster and Luckett's shooting at rival gang members. While the defense presented a competing version of the shootings based on a theory of self-defense, there was sufficient evidence in this record to warrant instructing the jury on felony murder and the trial court did not abuse its discretion by so instructing the jury.

■ Defendant next argues unfair surprise and prejudice as the result of the jury being instructed on felony murder because he was only charged with intentional and knowing first degree murder. 720 ILCS 5/9—1(a)(1), (a)(2) (West 1996). The test is whether the indictment apprised defendant of the offense charged with sufficient specificity to allow him to prepare his defense and protect him from double jeopardy. *People v. Allen*, 56 Ill. 2d 536, 542-43 (1974). A jury may be instructed on felony murder even if felony murder was not specifically charged. *People v. Maxwell*, 148 Ill. 2d 116 (1992). "[T]he law in Illinois recognizes only one offense of murder; thus, there is no requirement that a defendant be charged specifically under section 9—1(a)(3) [(720 ILCS 5/9—1(a)(3) (West 1996))] in order to be convicted under the felony murder theory." *People v. Jackson*, 233 Ill. App. 3d 1089, 1096 (1992). The court in *Jackson* found no double jeopardy problem because if defendant was charged and acquitted under section 9—1(a)(1), he could not be tried for the murder of the same individual under subparagraph (a)(2) or (a)(3). *Jackson*, 233 Ill. App. 3d at 1097. The only inquiry was whether defendant could show prejudice from the State's decision to use a felony murder jury instruction despite the initial intentional and knowing murder charges. The court in *Jackson* found no prejudice because the defendant was aware of the felony murder theory from the instruction conference. *Jackson*, 233 Ill. App. 3d at 1098.

■ In this case, before trial the State informed defendant and the trial court that it sought to add a felony murder charge. The trial court denied the request, but put the defense on notice that such instruction would be given if supported by the evidence. Defendant knew that it was necessary to prepare a defense against the charges of

aggravated discharge of a firearm, contained in his indictment and serving as the predicate felony for the felony murder charge. Defendant was also well aware of the State's theory that the killing of Phillip Matthews occurred during the commission of this underlying felony. We find no abuse of discretion by the trial court as the defendant was not unfairly surprised or prejudiced by this instruction.

■ ■ Defendant additionally argues the felony murder instruction was improperly given because aggravated discharge of a firearm cannot serve as a predicate felony for a felony murder charge. A defendant commits aggravated discharge of a firearm when he knowingly or intentionally discharges a firearm in the direction of a person. 720 ILCS 5/24—1.2(a)(2) (West 1996). The Illinois Criminal Code of 1961 requires that the offense underlying a felony murder be a "forcible felony." 720 ILCS 5/9—1(a)(3) (West 1996).

■ While aggravated discharge of a firearm is not specifically listed among the forcible felonies that will trigger a charge of felony murder, we note the definition of forcible felony is not limited to those listed and includes any "felony which involves the use or threat of physical force or violence against any individual." 720 ILCS 5/2—8 (West 1996). Aggravated discharge of a firearm is a proper predicate felony for felony murder because knowingly or intentionally discharging a firearm in the direction of a person involves the use or threat of physical force or violence against an individual. The purpose of the felony murder statute is to deter individuals from committing forcible felonies by holding them responsible for murder if death results from their criminal acts that involve use or threat of force or violence against any individual. *People v. Graham*, 132 Ill. App. 3d 673, 680 (1985). This law exists because forcible felonies are so inherently dangerous that a resulting homicide, even an accidental one, is strongly probable. *People v. Jenkins*, 190 Ill. App. 3d 115, 126 (1989). It is therefore consistent with the purpose of the felony murder statute to recognize aggravated discharge of a firearm as a predicate felony for felony murder.

Moreover, Illinois case law has recognized this crime as a predicate felony for felony murder; "[b]ecause the offense of aggravated discharge of a firearm necessarily involves violence directed against an individual, it constitutes a forcible felony within the intendments of felony murder." *People v. Pugh*, 261 Ill. App. 3d 75 (1994). In *Pugh* the defendants were charged with felony murder based on the predicate felony of aggravated discharge of a firearm. Defendants had fired at several people who returned fire, and the victim was killed. *Pugh*, 261 Ill. App. 3d at 76. The appellate court reversed the trial court's dismissal of the felony murder charges and held that the felony murder charges were proper because "[d]efendants are responsible for any

death precipitated by their initial criminal acts provided it was their criminal acts which set in motion the events which ultimately resulted in death." *Pugh*, 261 Ill. App. 3d at 77. The court noted that, under felony murder, the defendant may be liable for either an intentional or accidental killing or for a killing committed by an accomplice or a third party. *Pugh*, 261 Ill. App. 3d at 77. In addition, the defendant need not perform the acts that cause the victim's death, and the defendant's felonious conduct does not have to be contemporaneous with the death. *Pugh*, 261 Ill. App. 3d at 77-78. The court concluded that "it was foreseeable that if defendants here fired guns in the direction of other people, someone would be likely to return fire and, just as likely, someone could be killed." *Pugh*, 261 Ill. App. 3d at 78.

We note the fourth district in *People v. Morgan*, 307 Ill. App. 3d 707 (1999), held that under the facts of that case aggravated discharge of a firearm could not properly be used as the predicate felony for the felony murder charge. We note the facts of *Morgan* are significantly different from the facts we have here. In *Morgan*, the 14-year-old defendant killed his grandfather after his grandfather beat him on the buttocks with a razor strap for receiving a detention. The defendant originally obtained the gun to kill himself, loaded it, took aim and fired at a bottle. Because his grandfather had threatened in the past to kill him, he believed his firing the gun would provoke his grandfather to carry out the threat. As the defendant left the bathroom, he encountered his grandfather coming toward him and shot him. His grandmother was standing in the hallway screaming and the defendant shot her in the back as she ran out of the house. *Morgan*, 307 Ill. App. 3d at 709.

■ The *Morgan* court discussed the *Pugh* case and concluded that in *Pugh* felony murder was properly charged because the defendant committed the independent felony of aggravated discharge of a firearm by engaging in a gun battle and a bystander was killed by return fire. *Morgan*, 307 Ill. App. 3d at 713. However, in addressing the defendant's conviction for the first degree murder of his grandmother the *Morgan* court indicated, "Because the record in this case fails to show the commission of a predicate felony that had an independent felonious purpose, we conclude that the trial court erred by instructing the jury that defendant could be convicted of first degree murder on a felony murder theory." *Morgan*, 307 Ill. App. 3d at 714. The *Morgan* court held "that the predicate felony underlying a charge of felony murder must involve conduct with a felonious purpose other than the killing itself." *Morgan*, 307 Ill. App. 3d at 714.

We find the facts here similar to the factual scenario in *Pugh* and dissimilar to the facts of *Morgan*. Like *Pugh*, there was evidence here

that the defendant and his companions engaged in a gun battle. The .38-caliber bullet recovered from the victim could not have been fired from either of the codefendants' guns and that evidence demonstrates that, like the victim in *Pugh*, the victim here could have been shot by return fire. Under the State's version of the facts in this case, a jury could find that the defendant and his codefendants were not acting in self-defense and it was their criminal acts, including firing their guns in the direction of the Four Corner Hustlers, that set in motion the events that ultimately resulted in the death of Phillip Matthews. That conduct involved the independent felonious purpose of discharging firearms in the direction of Antoine and Terrance Harris. Based on the record in this case, the evidence produced by the State shows the commission of a predicate felony that had an independent felonious purpose. Specifically there was evidence that the defendant and his codefendants were rivals of the Four Corner Hustlers. The Four Corner Hustlers yelled threats, threw a bottle at defendant's car, and codefendants Foster and Luckett discharged their weapons at the rival gang members. Phillip Matthews was not part of the group involved in this original confrontation and shooting, but he was shot several minutes later at a different location. The evidence could support the conclusion that the conduct of firing the weapons was thus motivated by a felonious purpose other than the killing of Phillip Matthews.

As *Morgan* noted, in *Pugh* the defendant intended to commit the independent forcible felony of aggravated discharge of a firearm and a death resulted from the use of violence. *Morgan*, 307 Ill. App. 3d at 713. In this case there is evidence that defendant and his companions intended to commit the independent forcible felony of aggravated discharge of a firearm by shooting at the Harris brothers and a death resulted from the use of violence. The *Morgan* court concluded that under the facts of *Pugh* felony murder was properly charged. The facts of *Pugh* are similar to the facts we have under consideration here. We agree with *Morgan*'s observation related to *Pugh* and similar cases that "[a]pplication of the felony murder rule in such cases advances the 'legislature's concern for protecting the general populace and deterring criminals from acts of violence.'" *Morgan*, 307 Ill. App. 3d at 713, quoting *People v. Lowery*, 178 Ill. 2d 462, 469 (1997). For the same reasons, the felony murder rule applies under the facts of the instant case.

Defendant's sole support for his argument that aggravated discharge of a firearm may not support a felony murder conviction because the predicate felony involved an intent to kill is *People v. Viser*, 62 Ill. 2d 568 (1975). *Viser*, however, holds the opposite. In *Viser*, the Illinois Supreme Court considered whether felony murder

could be charged when the predicate felony was the aggravated battery that resulted in the victim's death. *Viser*, 62 Ill. 2d at 578. The court noted that most felony murders involve an aggravated battery or an assault. *Viser* rejected the defense argument that aggravated battery cannot be the underlying felony in a felony murder charge where the aggravated battery is committed against the person who eventually dies. *Viser*, 62 Ill. 2d at 577.

In *People v. Szerletich*, 86 Ill. App. 3d 1121 (1980), the court, citing to *Viser*, noted that the felony murder doctrine is operative in Illinois even though the underlying felony is aggravated battery and does not involve conduct with an independent felonious purpose other than the homicide itself. *Szerletich*, 86 Ill. App. 3d at 1123. Thus, these cases are seemingly inconsistent with the holding reached in *Morgan* that the predicate felony underlying a charge of felony murder must involve conduct with a felonious purpose other than the killing itself. The court in *Morgan*, however, indicates its ruling is consistent with the holding in *Viser* because "the rule enunciated here does not preclude a conviction for felony murder on facts such as those in *Viser* *** and *Pugh*." *Morgan*, 307 Ill. App. 3d at 715.

■ Using the *Morgan* analysis we conclude under the facts of this case that there is sufficient evidence that the predicate felony underlying the felony murder involved conduct with a felonious purpose other than the killing itself. Moreover, even in the absence of evidence of an independent felonious purpose, we conclude, relying on the *Viser* rule, which seems to be inconsistent with the independent felonious purpose rule enunciated by *Morgan*, that aggravated discharge of a firearm under the facts of this case is a proper predicate felony for felony murder. The trial court did not abuse its discretion by instructing the jury on felony murder with the predicate felony of aggravated discharge of a firearm because there is sufficient evidence to warrant this instruction.

## B. Second Degree Murder Instruction

■ Defendant argues the evidence was sufficient to raise the issue of whether he had an unreasonable belief that self-defense was necessary and thereby required instructing the jury on second degree murder. A person commits second degree murder when he commits the offense of first degree murder and at the time of the killing he believes the circumstances to be such that, if they exist, they would justify the use of deadly force under the principles of self-defense, but his belief is unreasonable. 720 ILCS 5/9—2(a)(2) (West 1996).

■ The United States Supreme Court has observed that, "[a]s a general proposition[,] a defendant is entitled to an instruction as to

any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor." *Mathews v. United States*, 485 U.S. 58, 63, 99 L. Ed. 2d 54, 61, 108 S. Ct. 883, 887 (1988). If there is evidence that, if believed by the jury, would reduce a crime from first degree murder to some lesser degree of murder, defendant's requested instruction must be given; however, the defendant has the burden of proving that at least "some evidence" exists. *People v. Austin*, 133 Ill. 2d 118, 125 (1989).

 The State relies on *People v. Tenner* to support its argument that a second degree murder instruction is not warranted when the defendant is the aggressor and the defendant's use of force is exerted while defendant is committing a forcible felony. *People v. Tenner*, 157 Ill. 2d 341 (1993); 720 ILCS 5/7—4(a) (West 1998). In *Tenner* the defendant's conduct in arming himself with a shotgun and preparing ropes with which to bind the victims established that he was the aggressor, he was attempting to commit or committing the forcible felony of unlawful restraint and the victim was killed during the course of that felony. *Tenner*, 157 Ill. 2d at 373. Unlike *Tenner*, there is sufficient evidence in this case that a trier of fact could believe that demonstrates that defendant was not the aggressor and the victim was not killed during the course of a forcible felony. Identifying the initial aggressor is a question of fact for the jury to resolve. *People v. Johnson*, 247 Ill. App. 3d 578, 585 (1993). When the evidence conflicts on the issue of who initiated the violence, the trial court must instruct the jury on the defendant's justifiable defenses supported by the evidence. *People v. Robinson*, 163 Ill. App. 3d 754, 761 (1987).

 Moreover, when a defendant is prosecuted for murder during the course of a forcible felony, an instruction on a lesser mitigated offense of murder has been held to be appropriate if supported by the evidence. As recognized by the court in *People v. Taylor*, 212 Ill. App. 3d 351, 357-58 (1991), if the evidence warrants submitting an instruction on a lesser mitigated offense of murder to the jury, then it is reversible error not to do so. The *Taylor* court acknowledged the cases that have held that where a defendant is charged with felony murder, an instruction on a lesser mitigated offense of murder may not be warranted. *Taylor*, 212 Ill. App. 3d at 357, citing *People v. Ellis*, 93 Ill. App. 3d 981, 984 (1981) (and cases cited therein). However, the *Taylor* court factually distinguished those cases and noted the conflicting evidence as to whether the killing in *Taylor* occurred during the commission of a forcible felony. The *Taylor* court concluded that even though defendant was charged with felony murder there was sufficient evidence in the record also to support instructing the jury on involuntary manslaughter. *Taylor*, 212 Ill. App. 3d at 357-58.

■ The committee notes to Illinois Pattern Jury Instructions, Criminal, No. 7.06A (3d ed. Supp. 1996) (hereinafter IPI Criminal 3d No. 7.06A (Supp. 1996)) also recognize that there can be sufficient evidence in the record to support instructing the jury on both felony murder and second degree murder when belief of justifiable use of force is an issue. These notes indicate that, "[p]ursuant to section 9—2(a) *** the offense of second degree murder may not be based upon first degree murder under section 9—1(a)(3) (felony murder). *** [However,] [w]hen first degree murder under Section 9—1(a)(3) [(felony murder)] and first degree murder under Section 9—1(a)(1) or 9—1(a)(2) [(intentional, knowing murder)] are both charged and the court is also instructing on the lesser offense of second degree murder, Instruction 7.02A should be used for the count under Section 9—1(a)(3), and Instruction 7.06A should be used for the other first degree murder counts upon which second degree murder may be based." IPI Criminal 3d No. 7.06A (Supp. 1996), Committee Notes, at 68.

The State, relying on *People v. Salgado*, 287 Ill. App. 3d 432 (1997), contends that even if unreasonable belief in justification was available to defendant and his companions, the evidence did not warrant such an instruction. In *Salgado*, defendant testified that he confronted the victims because he wanted to "beat them up" and, after initiating the violence, he fired at the victims in their car, killing the passenger. Defendant contended that he only meant to scare them and fired at the backseat. The court held that the defendant and his two companions were the aggressors, attacking the unarmed victims with a gun and a baseball bat. Affirming the trial court's refusal to instruct the jury on second degree murder, the appellate court found that there was no evidence defendant was in any imminent danger; rather, the evidence showed that the killing was "cold and senseless." *Salgado*, 287 Ill. App. 3d at 446. Unlike *Salgado* there is evidence the defendant and his companions were in imminent danger of death or great bodily harm. In addition to the testimony of the defendant, there was evidence that corroborated the fact that deadly force was used by defendant and his companions in self-defense against the violence initiated by the Four Corner Hustlers. The question is whether this evidence was sufficient evidence to warrant a second degree murder instruction.

■ In determining whether defendant has established sufficient evidence entitling him to an instruction on second degree murder, we may consider factors including the defendant's intent or motive, a recent history of violence, the previous relationship between the parties, the type of wound suffered by the victim, any contact between

the defendant and victim, and the circumstances surrounding the incident. *People v. Everette*, 141 Ill. 2d 147, 158 (1990).

With these factors in mind, we determine whether the evidence warranted an instruction on second degree murder. We thus consider the evidence that Antoine Harris and defendant were involved in a previous altercation on October 6, 1995, four days before the shooting in this case, in the same neighborhood. According to defendant, Antoine threatened him, shot at him and tried to kill him on October 6, 1995. It is uncontested that as a result of this incident an ambulance and the police were called by the defendant. Two prosecution witnesses, Antoine Harris and defendant's girlfriend, Anita McClinton, corroborated the fact that Antoine had "angry words" with defendant on October 6, 1995. Anita McClinton stated that Antoine first threw up gang signs and ordered defendant out of the neighborhood. The stipulated testimony of emergency technician Morrin indicated he responded to a call on October 6, 1995, and defendant at that time believed he had been shot in the chest. Morrin was unable to find an entrance or exit wound; however, defendant was taken to Francis Hospital in Blue Island. Defendant had Antoine arrested as a result of this confrontation.

Four days after this confrontation, the shooting occurred in this case. The evidence is uncontroverted that, at the time of the shooting, there was animosity between the defendant and the Harris brothers, the defendant was in rival gang territory, and he was outnumbered by at least three to one. Defendant testified that he asked Luckett and Foster to accompany him to his girlfriend's house because of problems he had had with the Harris brothers and his fear of them. That fear was based on the previous threats and altercations, including the shooting incident involving Antoine Harris from October 6, 1995. Defendant denied any plan or intent to shoot at Four Corner Hustlers. When he drove across Halsted, defendant heard Antoine scream "GDK," a threat meaning "Gangster Disciple Killer." Defendant then heard a bottle strike his car and he stopped the vehicle to check for damage. Defendant testified that he next heard shots fired and, because he was scared and feared he might be shot, he drove off. As defendant drove out of the area, he heard 9 or 10 more shots. Defendant's testimony that Antoine shot at him four days before this confrontation, together with his testimony that the Four Corner Hustlers gathered in force, ran at his car, shouted deadly threats and threw a bottle, provided evidence of aggressive, threatening behavior in support of his belief that he was in imminent danger. The testimony of State witness Antoine Harris corroborated defendant's version of the shooting. Antoine admitted there were 9 or 10 Four Corner Hus-

tlers with him. Antoine corroborated defendant's testimony when he admitted "jogging after Toney's car, yelling threats," as well as throwing a bottle at defendant's car. Antoine indicated he did not like defendant coming into his territory between Halsted and Union on 123rd Street. Although they denied having guns that night, the Harris brothers conceded that their gang had guns.

Defendant's testimony was further corroborated in part by some of the other State witnesses and by the firearm evidence. Terrance Harris corroborated the fact that his brother Antoine threw a bottle and he heard 15 or 16 shots coming from different directions. Bobby Roberson, a State witness, supported the defense theory that persons other than Foster and Luckett were firing weapons. During a period of approximately 15 minutes, Roberson heard shots fired from three separate locations. First he heard a single shot, then several minutes passed and he heard 20 shots, time passed and he heard 8 more shots followed by 5 shots. He testified that bullets were bouncing off houses, gates and fences. The recovery of bullets from the scene as well as a .38-caliber bullet from the victim's body that did not match either the rifle or the 9 millimeter supported defendant's testimony that shots were fired by individuals other than Foster and Luckett. This was further corroboration for defendant's statement that he felt threatened and feared he might be shot. In *People v. Thomas*, 185 Ill. App. 3d 1050 (1989), where a defendant testified he felt threatened and heard shots coming from the victim's direction, the court found sufficient evidence to warrant instructing the jury on voluntary manslaughter. *Thomas*, 185 Ill. App. 3d at 1054.

Even if inconsistencies exist in defendant's testimony, the defendant is entitled to the benefit of any defense and instruction supported by the entire evidence. *People v. Bratcher*, 63 Ill. 2d 534, 540 (1976). The trial judge recognized that there were competing theories factually at issue in this case and found the defendant was entitled to an instruction on self-defense because that instruction was supported by the evidence. The submission of the self-defense instruction by the trial judge indicates his determination that the jury could conclude defendant acted with the subjective belief his conduct was in self-defense. There was sufficient evidence in the record to support that determination. However, the refusal to instruct the jury on second degree murder prevented the jury from determining whether defendant's subjective belief that he was justified in self-defense was a reasonable or unreasonable belief. We cannot reconcile the trial court's finding sufficient evidence to warrant a self-defense instruction, and thereby allowing the jury to consider whether defendant's subjective belief was reasonable, with the trial court's refusal to allow the jury to consider whether that belief was unreasonable.

When the evidence supports giving the jury an instruction on the justifiable use of force in self-defense, then an instruction for second degree murder should likewise be given. *People v. Lockett*, 82 Ill. 2d 546, 552 (1980). In *Lockett*, the court determined that a self-defense and voluntary manslaughter (now second degree murder) instruction should be given when any evidence is presented showing the defendant's subjective belief that use of force is necessary. *Lockett*, 82 Ill. 2d at 552. The court noted the judge's duty is to determine if any evidence is presented that the defendant had a subjective belief that use of force is necessary, while it is the duty of the jury to weigh the evidence and determine if the belief existed and if so whether that belief was reasonable or unreasonable. *Lockett*, 82 Ill. 2d at 552-53.

Based on the recent history of violence between the rival gangs, the evidence of a confrontation between Antoine Harris and defendant four days before the shooting in this case, the testimony of defendant and some of the testimony of the State's witnesses, as well as the firearm evidence, we conclude the record demonstrates sufficient evidence to warrant an instruction on second degree murder. By all witness accounts of the incident, it was Foster and Luckett who fired weapons while defendant remained in the car. Under the law, defendant is accountable for the conduct of Foster and Luckett. It was for the jury, however, with the benefit of the proper instructions, to decide the nature of that conduct, whether the killing was felony murder, second degree murder or justified as self-defense.

We note parenthetically that a separate jury, which resolved codefendant Foster's case before defendant went to trial, received a second degree murder instruction and returned against Foster a verdict of guilty for second degree murder. While this plays no part in our analysis, we cannot say the result in this case would not have been different had the jury been properly instructed. Whether under the circumstances at the time of the killing defendant and his companions out of fear for their lives believed that the use of deadly force was justified but this belief was unreasonable is a determination to be made by the jury, not by the judge. By failing to provide a second degree murder instruction, the trial court took this question away from the jury. There was sufficient evidence in the record to warrant instructing the jury on second degree murder and the refusal to so instruct was an abuse of discretion.

### III. Insufficiency of the Evidence

■ Defendant argues he cannot be held accountable for felony murder because the prosecution failed to prove beyond a reasonable doubt the "identity of the actual shooter." In reviewing a sufficiency-

of-evidence claim, the court views the evidence in the light most favorable to the prosecution and determines if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Batchelor*, 171 Ill. 2d 367, 376 (1996).

■ The Illinois Supreme Court reversed *People v. Lowery*, 281 Ill. App. 3d 706 (1996), the case defendant relies upon to support his argument. *People v. Lowery*, 178 Ill. 2d 462 (1997). In *Lowery*, the Illinois Supreme Court reviewed the nature of the felony murder doctrine and noted that Illinois follows the "proximate cause" theory of liability for felony murder, that is, liability attaches "for any death proximately resulting from the unlawful activity—notwithstanding the fact that the killing was by one resisting the crime." *Lowery*, 178 Ill. 2d at 465. As *Lowery* provides, who fired the fatal shot is irrelevant under the theory of felony murder. *Lowery*, 178 Ill. 2d at 469-70. Based on the record, we conclude there was sufficient evidence to support the jury finding defendant guilty beyond a reasonable doubt of felony murder.

## IV. Admitting Two Weapons Into Evidence

Defendant next argues that the trial court erred in admitting the rifle and 9 millimeter handgun into evidence. Defendant did not object to this evidence and waived appellate review of this issue. *People v. Enoch*, 122 Ill. 2d 176 (1988).

■ Waiver aside, the trial court properly admitted the weapons into evidence. A weapon is admissible if it is connected both to the crime and to the defendant. *People v. Free*, 94 Ill. 2d 378, 415-16 (1983). Although the weapon need not be the exact weapon used in the crime, the evidence must show that the weapon was at least suitable for the commission of the crime. *Free*, 94 Ill. 2d at 415-16. Examples of evidence that renders a weapon suitable for the crime are physical evidence that connects the weapon to the crime scene or victim (*Free*, 94 Ill. 2d at 415-16) or eyewitness testimony that the weapon was identical to the weapon used by the perpetrator (*People v. Lee*, 242 Ill. App. 3d 40, 42-43 (1993)).

■ In this case, the two admitted weapons were suitable for the commission of the crime based on both the physical evidence and witness testimony. Antoine Harris identified the rifle as the weapon that codefendant Foster pointed and shot at him after Foster exited defendant's car. The police, accompanied by codefendant Luckett, recovered both the rifle and the 9 millimeter handgun within hours of the crime. Recovered fired cartridge casings from the crime scene were consistent with the rifle.

Defendant contends that the firearm expert's testimony estab-

lished that neither the rifle nor the handgun was suitable for the commission of the crime. Defendant points to the bullet retrieved from the victim's body that, according to the firearm expert's testimony, could not have been fired from either the rifle or the 9 millimeter handgun. While the bullet recovered from the victim did not match the two weapons, the medical examiner testified that the victim sustained two or three separate gunshot wounds and only the bullet recovered remained in the victim's body. The other bullets, including the bullet that struck the victim's brain and caused the fatal wound to the victim, exited his body and traveled at a high velocity. The rifle was suitable for the commission of the crime because the path of the bullet that hit the victim's brain was consistent with the speed of a bullet fired from the rifle.

The evidence further connected the weapons to the defendant. The defendant denied involvement in the shooting and only after the police showed the defendant the rifle and the 9 millimeter handgun did he admit involvement. See *People v. Washington*, 127 Ill. App. 3d 365, 383 (1984). Defendant's statement identified both weapons as the weapons Luckett obtained from defendant's house and brought with him. The weapons corroborated defendant's statement. The trial court properly admitted the rifle and 9 millimeter weapon because the State presented sufficient evidence to connect the weapons both to the crime and to the defendant.

## V. Closing Argument

■ Defendant contends that comments during the State's closing arguments were improper. Although defendant failed to object to all of these comments during trial, we review them in light of defendant's remand for retrial. Defendant alleges the State erred in arguing that the rifle fired the shot that killed the victim and that defendant turned over the weapons to the police. A prosecutor may comment on the evidence and may draw all legitimate inferences from the evidence, even if unfavorable to the defendant. *People v. Harris*, 196 Ill. App. 3d 663, 675 (1990). In addition, attorneys are entitled to wide latitude in closing argument to discuss the evidence. *People v. Chavez*, 265 Ill. App. 3d 451, 459-60 (1994).

■ We find no error in the prosecutor's comments regarding the rifle. The medical examiner testified that the fatal bullet exited the victim's body and, because of its path, traveled at a high rate of speed. The firearm expert testified that fired bullets from the rifle travel at a high rate of speed and therefore a reasonable inference from the evidence is that a bullet from the rifle killed the victim. Regarding the guns that were turned over to the police, the prosecutor specifically

stated, "We know for sure this was out there. They turned in this but when they turned it in, there's no clip and it's inoperable." The testimony established Luckett accompanied the police to where the weapons were located. The prosecutor's comment was properly based on the evidence and reasonable inferences therefrom.

■ Defendant next alleges the following statements were error. "Now, Philip Matthews was a victim. He was a victim of gang life. This Philip Matthews. But he's a victim of Gangster Disciple's actions." The State's comment properly referred to the evidence. Both parties acknowledge that the shootings in this case involved street gang rivalry. It is not error for the prosecution to comment on the evil results of gang activity where as here such activity is related to the crime charged. *People v. Smith*, 141 Ill. 2d 40, 62 (1990).

■ Defendant's argument that the prosecutor indicated the shooting was motivated by a "stupid" argument over "tennis shoes, Starter jackets, and machismo" is inaccurate. The prosecutor made a general comment based on common sense and everyday experience that gang problems in general are stupid and over such things as tennis shoes, Starter jackets and who is more macho. The prosecutor explained that the State is not required to prove motive by stating that "you are not going to find an instruction that says the State has to prove motive. We don't have to prove it. We don't have to tell you why he did this." We are mindful that it is improper to attribute motive without a factual basis. *People v. Davis*, 278 Ill. App. 3d 532, 542 (1996). The prosecutor did not attribute motive for the shootings to any particular factual basis, but properly told the jury that while gang problems can be motivated by silly and stupid reasons, the law does not require the State to prove motive.

■ Defendant next alleges error by the prosecutor's statement in rebuttal that "[d]efendant doesn't want you to focus on the real issue" and contends that the State improperly attacked defense counsel. During final arguments, the State may not argue that defense counsel has lied, fabricated a defense, or suborned perjury. *People v. Emerson*, 97 Ill. 2d 487 (1983). The State, however, may comment or respond to arguments made by defense counsel in closing argument. *People v. Carroll*, 260 Ill. App. 3d 319, 347 (1992).

Here defense counsel directly asked the prosecutor to answer how the forensic evidence supports her theory of a "commando raid." In response, the prosecutor stated that defense counsel was focusing on the wrong issue and asked the jury to focus on other evidence. The prosecutor never suggested that defense counsel was lying, making things up, or fabricating a defense. Therefore, the prosecutor's argument was not error, but invited comment.

■ Defendant contends that the prosecutor misstated the presumption of innocence when she argued that "[defendant] is no longer cloaked in innocence. We have torn that from him." In *People v. Keene*, 169 Ill. 2d 1, 24 (1995), our supreme court held that it was error for the prosecutor to argue that defendant's " 'cloak of innocence' " had been " 'shredded and ripped and pulled [off].' " The court noted that the defendant enjoys the presumption of innocence until the jury decides during *deliberations* that defendant is guilty of the charged offenses. *Keene*, 169 Ill. 2d at 26. The State's limited reference to the presumption of innocence ameliorated the extent of harm if any. However, on retrial this comment or any similar comment suggesting that the presumption of innocence can be eliminated before a jury returns a verdict, including but not limited to the presumption being described as torn off, shredded, ripped or pulled off, should not be repeated.

■ Finally, the defendant claims the prosecutor's argument about defendant's initial statements to the police were improper comment on defendant's postarrest silence. The prosecution may not cross-examine a defendant about his initial postarrest silence or infer guilt from such silence. *Doyle v. Ohio*, 426 U.S. 610, 619, 49 L. Ed. 2d 91, 98, 96 S. Ct. 2240, 2245 (1976). The *Doyle* rule does not apply to questions about a defendant's prior inconsistent statements. When a defendant does not remain silent after being advised of his *Miranda* rights, his failure to offer an exculpatory story to police may be used for impeachment if his arrest statements go beyond mere denial of knowledge and are inconsistent with his exculpatory trial testimony. *People v. Mischke*, 278 Ill. App. 3d 252 (1995). Once a statement is made, impeachment by omission is not precluded by the *Doyle* rule. *People v. Garza*, 276 Ill. App. 3d 659 (1995).

In this case, the prosecutor did not comment on defendant's post-arrest silence but on the inconsistent statements defendant made to the police. Defendant made statements to the police. During defendant's cross-examination, the prosecution questioned defendant on facts that defendant did not include in statements he made to the police, but that he added to his trial testimony, such as his claim that shots were fired at him. This was proper cross-examination. *People v. Mischke*, 278 Ill. App. 3d at 265. It is equally proper for the prosecution to comment on defendant's inconsistent statements during closing argument. Therefore, we do not find error in the prosecution's comment on defendant's postarrest statements.

## VI. Consecutive Sentencing

Because we reverse and remand for new trial, we need not address defendant's argument regarding consecutive sentencing.

## VII. Conclusion

We find the trial court erred by not properly instructing the jury as to intentional, knowing and second degree murder and reverse defendant's convictions and sentences. The record contains sufficient evidence for the jury to have found the defendant guilty beyond a reasonable doubt. There is no double jeopardy impediment to a new trial. *People v. Porter*, 168 Ill. 2d 201, 215 (1995). We also note that we have made no finding as to defendant's guilt that would be binding on retrial. *People v. Jones*, 175 Ill. 2d 126, 134 (1997).

For the foregoing reasons, the judgment of the circuit court of Cook County is reversed and this cause is remanded for a new trial consistent with this opinion.

Reversed and remanded.

TULLY and GALLAGHER, JJ., concur.