NO. 4-04-0771          Filed 4/18/07

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

THE PEOPLE OF THE STATE OF ILLINOIS,    )    Appeal from
          Plaintiff-Appellee,           )    Circuit Court of
          v.                            )    Champaign County
MAURICE A. JACKSON,                     )    No. 03CF687
          Defendant-Appellant.          )
                                        )    Honorable
                                        )    Thomas J. Difanis,
                                        )    Judge Presiding.
_____

          JUSTICE COOK delivered the opinion of the court:

          A jury convicted defendant, Maurice A. Jackson, of

first degree murder (720 ILCS 5/9-1(a)(1) (West 2004)).  On July

27, 2004, the trial court sentenced defendant to 40 years in

prison.  Defendant appeals, arguing (1) the State failed to prove

his guilt beyond a reasonable doubt in light of the jury's answer

to a special interrogatory; (2) the trial court committed revers-

ible error by refusing to give a jury instruction on involuntary

manslaughter; (3) the trial court committed reversible error by

refusing to give a jury instruction on self-defense/justified use

of force.  We affirm.

                          I. BACKGROUND

          On the evening of April 20, 2003, police officers

responded to reports of a shooting in the 400 block of West

Eureka Street in Champaign.  When officers arrived, they found

17-year-old Demarcus Cotton lying in the street, the victim of an

apparent gunshot wound. Cotton died at the hospital. An autopsy revealed a bullet wound to the abdomen had caused massive blood loss, leading to cardiac arrest. There was also an insignificant gunshot wound to the right elbow, and a bullet fragment was found in Cotton's right shoelace. Three shell casings were collected at the scene of the shooting.

The next morning police officers spoke to defendant, an 18-year-old male. Defendant agreed to accompany them to the Champaign police station, where the officers spoke to him in an interview room. Defendant eventually admitted he had been present on Eureka Street. He stated he had been armed with a handgun and had fired the gun at a person with whom he had been involved in an altercation earlier in the day. At this point, the officers advised defendant of his rights under Miranda v. Arizona, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602 (1966).

Defendant agreed to give a videotaped statement, which was later introduced at trial. Defendant stated that he had met Cotton 9 to 10 months earlier, when Cotton tried to sell mari-juana to defendant and his friend, Tyran Bascomb. Defendant and Bascomb did not buy the drugs but stole them from Cotton. On the afternoon of April 20, Cotton and two other men confronted defendant about the marijuana. Cotton attempted to strike defendant, and defendant struck back. Defendant ran to Priscilla Lee's house, where his friend Bascomb was present. Priscilla

- 2 -

Lee's daughter, Mary, was Bascomb's girlfriend. Defendant and Bascomb came outside, and more fighting ensued until Lee screamed that she was calling the police. As Cotton left, he told defendant to meet him at Beardsley Park.

Defendant stated that he had previously returned a gun to Cole Baker. Defendant and Bascomb went to Baker's home, where Baker gave Bascomb the gun. Defendant's cousin, Ashanti, gave defendant and Bascomb a ride to Beardsley Park, where they spoke to a friend, who said he would speak to Cotton in hopes of ending the dispute. When Cotton spotted defendant, however, a verbal exchange took place. Defendant saw Cotton take a portable music player from his pocket, but he did not see a weapon. Cotton advanced on defendant in a manner that indicated to defendant he wanted to fight. While Cotton was still a distance away, defendant pulled out the gun, fired it twice with his back toward Cotton, and prepared to run. Bascomb then called out "gimme the gun, gimme the gun." Defendant gave the gun to Bascomb and "then I looked back one time and start running. And then [,officer,] that's when I heard the gunshot and then we got back into the van." Defendant and Bascomb returned to Lee's house, and Bascomb took the gun and hid it in a tree in the backyard.

The State called Bascomb as a witness. Bascomb, 22 years old, was in custody for delivery of a controlled substance. In 2000 and 2001 he had been convicted of misdemeanor theft. In

- 3 -

2000, 2001, and 2002, he had been convicted of obstruction of justice. Bascomb confirmed that defendant, his close friend, had come to Lee's house with Cotton chasing him and trying to fight. Cotton had five friends with him. Bascomb intervened and fought with one of Cotton's friends. Cotton and defendant yelled that they were going to "mirk" (kill or fight) each other. Bascomb and defendant were told to meet Cotton and his friends at Beardsley Park.

Bascomb accompanied defendant to Baker's house but did not know the reason for going there. He saw defendant speak to Baker but did not hear them or see Baker give defendant anything. Bascomb and defendant were given a ride to Beardsley Park. Defendant began playing with the gun, causing it to jam. Bascomb unjammed the gun and returned it to defendant but kept the clip. He was afraid defendant did not know how to handle a gun and decided it would be dangerous for defendant to be in possession of a loaded gun. Bascomb told defendant to "just not use the gun." Bascomb also told defendant to just fire "a warning shot." Defendant said he only wanted to fight and that he would fire the gun into the air to scare people.

After they saw Cotton, a few friends went to talk to him and see if they could quell tempers. Meanwhile Bascomb and defendant discussed the clip. Bascomb testified defendant asked him for the clip, and they had an argument about it, but Bascomb

- 4 -

ended up giving it to him. When Cotton saw defendant he became enraged, and the two exchanged words. As Cotton approached, defendant pulled out the gun and fired three shots at Cotton. Bascomb ran after the first shot. Defendant was close behind. They returned to Priscilla Lee's house. Bascomb testified he never touched the gun after he had unjammed it and that defendant had not given him the gun during the shooting. At some point, defendant disposed of the gun but Bascomb did not see where he put it.

Various witnesses testified a number of shots were fired, and after a pause, other shots were fired. Other witnesses testified only three shots were fired. Some witnesses testified a man with a snake design on his jacket had the gun after the shooting and defendant did not have the gun.

Bascomb's girlfriend, Mary Lee, testified that after the shooting, at her mother's house, she observed defendant to be in shock. She asked what happened and defendant stated "I shot him." Mary asked Bascomb if that was true and Bascomb confirmed what defendant had stated. Defendant was asked what he was thinking and said, "Man, I don't know. The gun just went off." Police found the gun in a tree in Priscilla Lee's yard. A ballistics test established the gun to be the one that had fired the fatal shot and the bullet fragment found in Cotton's right shoelace.

- 5 -

The trial court instructed the jury on first degree murder. The trial court also instructed the jury on second degree murder that defendant had the burden of proving a mitigating factor, either provocation or belief in justification, so that he would be guilty of that lesser offense. The court refused to give an instruction on the lesser-included offense of involuntary manslaughter, the reckless performance of acts likely to cause death or great bodily harm. The court refused to give an instruction on self-defense, which would have defined when a person is "justified" in the use of force.

## II. ANALYSIS

### A. The Special Interrogatory and Sufficiency of the Evidence

The trial court gave the following standard instruction:

> "To sustain either the charge of first degree murder or the charge of second degree murder, the State must prove the following propositions:
>
> First Proposition: That the defendant, or one for whose conduct he is legally responsible, performed the acts which caused the death of Demarcus Cotton."

The second and third propositions, dealing with intent/knowledge and justification, also referred to the defendant "or one for

- 6 -

whose conduct he is legally responsible."  Illinois Pattern Jury Instructions, Criminal, No. 7.04, Committee Note at 200 (4th ed. 2000) (hereinafter IPI Criminal 4th).

At the request of the State, the trial court also asked a "special interrogatory" of the jury:

"If, however, you find the defendant guilty of first degree murder, your foreperson will preside during your deliberations on one additional question.  In addition to the verdict forms, you will be provided two forms that are answers to the question 'Has the State proven beyond a reasonable doubt that, during the commission of the offense, the defendant personally discharged a firearm that proximately caused the death of Demarcus Cotton?'

Your agreement on an answer must be unanimous.  Your answer must be in writing and signed by all of you including your foreperson."

After asking several times whether the special interrogatory would be inconsistent with a verdict of guilty of first degree murder, the jury unanimously answered the special interrogatory in the negative.

The State's purpose in asking the special interrogatory was to obtain a sentence enhancement under section 5-8-1(a)(1)(d)(iii) of the Unified Code of Corrections (730 ILCS 5/5-8-1(a)(1)(d)(iii) (West 2004)).  That section provides that "if, during the commission of the offense, the person personally discharged a firearm that proximately caused *** death to another person, 25 years or up to a term of natural life shall be added to the term of imprisonment imposed by the court."  730 ILCS 5/5-8-1(a)(1)(d)(iii) (West 2004).  Sentencing-enhancement provisions were called into question by Apprendi v. New Jersey, 530 U.S. 466, 490, 147 L. Ed. 2d 435, 455, 120 S. Ct. 2348, 2362-63 (2000), which holds that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury[] and proved beyond a reasonable doubt."

Several cases have used "special interrogatories" to comply with Apprendi.  In People v. Forcum, 344 Ill. App. 3d 427, 435, 800 N.E.2d 499, 506 (2003), where the defendant was convicted of first degree murder and other offenses, the State tendered a special interrogatory, "'Has the State proven beyond a reasonable doubt that the offense was committed by exceptionally brutal or heinous behavior indicative of wanton cruelty?'"  The jury answered in the affirmative and, based on its finding, the court sentenced defendant to an extended term of natural-life

- 8 -

imprisonment for first degree murder. Forcum, 344 Ill. App. 3d at 435, 800 N.E.2d at 506.

In our case, however, the jury answered the "special interrogatory" in the negative, and defendant now attempts to use the jury's answer to challenge the verdict of guilty of first degree murder. Defendant argues he was not proved guilty beyond a reasonable doubt because the State (1) failed to prove he personally discharged the firearm that caused the death and (2) presented no evidence that he was accountable for the actions of Tyran Bascomb. The State responds some evidence was presented from which the jury could have found that defendant was accountable for the actions of Bascomb. This court is accordingly requested to ignore the bulk of the evidence, that defendant was the shooter, and determine whether there is sufficient evidence that Bascomb was the shooter and defendant was responsible for Bascomb's conduct.

There is no statutory authority for special interrogatories in criminal cases. People v. Testin, 260 Ill. App. 3d 224, 235, 632 N.E.2d 645, 652 (1994). Even in civil cases, special interrogatories must be used with great care. A special interrogatory in a civil case provides the defendant with a "magic bullet" that he can use to upset the verdict against him. "When the special finding of fact is inconsistent with the general verdict, the former controls the latter and the court may

- 9 -

enter judgment accordingly." 735 ILCS 5/2-1108 (West 2000). The purpose of a special interrogatory is to test a general verdict against a jury's determination as to one or more specific issues of ultimate fact. Northern Trust Co. v. University of Chicago Hospitals & Clinics, 355 Ill. App. 3d 230, 251, 821 N.E.2d 757, 775 (2004).

It is improper to request a special interrogatory simply to gain some insight into a jury's thinking. A special interrogatory asking for a finding as to a mere evidentiary fact is always improper. Northern Trust, 355 Ill. App. 3d at 251, 821 N.E.2d at 776. A special interrogatory is in proper form only if it relates to an ultimate issue of fact on which the parties' rights depend and if an answer to the interrogatory would be inconsistent with a general verdict that the jury might return. Simmons v. Garces, 198 Ill. 2d 541, 555, 763 N.E.2d 720, 730 (2002). Where there were two alternate theories of negligence asserted against the defendant, and the special interrogatory addressed only one, the special interrogatory was not in proper form, as the answer to it would not necessarily be inconsistent with the general verdict. Stach v. Sears, Roebuck & Co., 102 Ill. App. 3d 397, 411, 429 N.E.2d 1242, 1252-53 (1981). A special interrogatory may focus on only one element of a claim, but only if that element is dispositive of the claim at issue. Northern Trust, 355 Ill. App. 3d at 253, 821 N.E.2d at 777.

- 10 -

If we apply civil rules to this criminal case, the interrogatory should never have been submitted to the jury. The answer to the interrogatory could not control the general verdict, whether defendant was guilty of first degree murder, because alternate theories were alleged and the special interrogatory addressed only one. The jury was instructed that to sustain the charge of first degree murder the State must prove that "the defendant, or one for whose conduct he is legally responsible, performed the acts." The special interrogatory addressed only whether defendant performed the acts.

Defendant was not entitled to a unanimous verdict on whether he fired the weapon or whether Bascomb fired the weapon. People v. Travis, 170 Ill. App. 3d 873, 890, 525 N.E.2d 1137, 1147 (1988). The jury need only be unanimous with respect to the ultimate question of defendant's guilt or innocence of the crime charged, and unanimity is not required concerning alternate ways in which the crime can be committed. Travis, 170 Ill. App. 3d at 890, 525 N.E.2d at 1147. It was improper to require the jury to unanimously agree to an answer to the special interrogatory here. The special interrogatory caused tremendous confusion for the jury, which correctly saw it as inconsistent with the general verdict where they were not required to agree on who fired the weapon. This case illustrates the reason why, even in civil cases, a special interrogatory is permitted only on an ultimate

- 11 -

issue, an issue that controls the case. The answer to a special interrogatory should not have the effect of pinning the State down to a single theory, perhaps the wrong theory, with the result that the true facts must be ignored.

Special interrogatories, at least the type of special interrogatories used in civil cases, should not be used in criminal cases absent a statute. Forcum, which allowed a special interrogatory, recognized that the use of special interrogatories in criminal cases is not favored. Forcum, 344 Ill. App. 3d at 439, 800 N.E.2d at 509, citing Testin, 260 Ill. App. 3d at 235, 632 N.E.2d at 652. Unlike the present case, the answer to the special interrogatory in Forcum not only could not have controlled the general verdict, it could not have affected the general verdict. "Brutal and heinous," the subject of the special interrogatory in Forcum, was not one of the theories upon which that defendant could be found guilty. There is no authority to ask a "special interrogatory" that would impinge upon the verdict of first degree murder. We refuse to consider the answer to the "special interrogatory" beyond the purpose for which it was asked--whether there could be a sentence enhancement.

The question on a challenge to the sufficiency of the evidence is whether, after examining the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime beyond a reason-

able doubt. People v. McDonald, 168 Ill. 2d 420, 443-44, 660 N.E.2d 832, 842 (1995). A reviewing court "will not reverse a criminal conviction unless the evidence is so unreasonable, improbable, or unsatisfactory that it creates a reasonable doubt of the defendant's guilt." McDonald, 168 Ill. 2d at 444, 660 N.E.2d at 842.

There clearly was sufficient evidence here for the jury to conclude that defendant was guilty of first degree murder. There was evidence that defendant and Cotton had been fighting earlier that day and threatened to kill each other. Defendant and Bascomb went to a friend's home to get a gun and proceeded to Beardsley Park, where defendant and Cotton became involved in an argument. Defendant admitted he fired shots in the direction of Cotton. Defendant testified he then gave Bascomb the gun and took off running, then looked back and heard Bascomb fire three or four times. Bascomb denied firing any shots and testified defendant fired three shots and then they both ran. The two fled together in Ashanti's van. Defendant told Mary Lee that he had shot Cotton. A rational jury could easily have concluded that defendant, or one for whose conduct he was legally responsible, performed the acts that caused the death of Demarcus Cotton.

B. Involuntary Manslaughter

Defendant argues the trial court erred when it refused his instruction on the lesser-included offense of involuntary

- 13 -

manslaughter where the evidence supported an inference that he recklessly caused the death of Demarcus Cotton.

The giving of jury instructions is a matter within the sound discretion of the trial court. An instruction on a lesser offense is justified when there is some credible evidence to support the giving of the instruction. People v. Jones, 219 Ill. 2d 1, 31, 845 N.E.2d 598, 614 (2006). Where there is evidentiary support for an involuntary-manslaughter instruction, the failure to give the instruction constitutes an abuse of discretion. "Whether an involuntary[-]manslaughter instruction is warranted depends on the facts and circumstances of each case." Jones, 219 Ill. 2d at 31, 845 N.E.2d at 614. An involuntary-manslaughter instruction was properly refused in Jones, despite pathologists' testimony the victim sustained a skull fracture that was either the result of a blow to the head by a blunt object or the result of a fall. "There was simply no evidence at trial to support defendant's claim that he inadvertently caused [the victim] to fall." Jones, 219 Ill. 2d at 32, 845 N.E.2d at 615.

"The basic difference between involuntary manslaughter and first degree murder is the mental state that accompanies the conduct resulting in the victim's death." People v. Daniels, 301 Ill. App. 3d 87, 95, 702 N.E.2d 324, 330 (1998). For first degree murder, the defendant knows his acts "create a strong probability of death or great bodily harm." 720 ILCS 5/9-1(a)(2)

- 14 -

(West 2000).  To step down to involuntary manslaughter the defendant performs acts "likely to cause death or great bodily harm" and he performs those acts "recklessly."  720 ILCS 5/9-3(a) (West 2000).  "Reckless conduct generally involves a lesser degree of risk than conduct that creates a strong probability of death or great bodily harm."  People v. DiVincenzo, 183 Ill. 2d 239, 250, 700 N.E.2d 981, 987 (1998).

A defendant who deliberately provokes a confrontation may still be entitled to an instruction on involuntary manslaughter.  "[A] defendant may act recklessly where he commits deliberate acts but disregards the risks of his conduct.  See 720 ILCS 5/4-6 (West 1994)."  DiVincenzo, 183 Ill. 2d at 252, 700 N.E.2d at 988 (involuntary-manslaughter instruction should have been given; weaponless fight involving individuals of the same general size and strength).

However, Illinois courts have consistently held that when the defendant intends to fire a gun, points it in the general direction of his or her intended victim, and shoots, such conduct is not merely reckless and does not warrant an involuntary-manslaughter instruction, regardless of the defendant's assertion that he or she did not intend to kill anyone. People v. Eason, 326 Ill. App. 3d 197, 210, 760 N.E.2d 519, 530 (2001); cf. People v. Williams, 293 Ill. App. 3d 276, 282, 688 N.E.2d 320, 325 (1997) (where defendant testified he closed his

eyes and fired in the air "above their heads" in order to scare the victim away, jury should have been instructed on reckless conduct as a lesser-included offense of aggravated discharge of a firearm). A defendant's "testimony that he did not intend to kill anyone does not provide a sufficient basis for instructing on involuntary manslaughter." People v. Cannon, 49 Ill. 2d 162, 166, 273 N.E.2d 829, 831 (1971).

That is not to say that a defendant's testimony is never worthy of belief. The jury is not entitled to disregard defendant's testimony merely because he is the defendant in the case. People v. Barney, 176 Ill. 2d 69, 74, 678 N.E.2d 1038, 1041 (1997). Rather, a defendant is not entitled to reduce first degree murder to a Class 1 felony by a hidden mental state known only to him and unsupported by the facts.

In the present case, defendant went to Beardsley Park looking for a fight, after first obtaining a weapon. The victim did not have a weapon. Defendant intentionally fired the weapon several times, in the general direction of the victim, striking the victim several times. Defendant argues the bullet fragment found in the shoelace supports the testimony that he fired toward the ground. See People v. Banks, 192 Ill. App. 3d 986, 996-97, 549 N.E.2d 766, 773 (1989) ("Surely, one does not point and fire a gun at the ground if he intends to kill someone"; involuntary-manslaughter instruction should have been given). Defendant

refers to evidence that he had said he would just fire the gun in the air as a warning to scare people, he fired the gun without aiming it, and he turned his back and fired behind him without looking where he was firing. Defendant did admit to the police, however, that he fired the gun at the victim. The evidence in this case did not require an involuntary-manslaughter instruction. As in Eason and Cannon, the trial court did not err in refusing defendant's tendered instruction on involuntary manslaughter. Nor does defendant's testimony that Bascomb was the shooter warrant the instruction. Even assuming Bascomb was the shooter, no evidence showed that Bascomb simply acted recklessly.

### C. Justification

Defendant argues the trial court improperly refused his instruction No. 13 on use of force in defense of a person:

"A person is justified in the use of force when and to the extent that he reasonably believes that such conduct is necessary to defend [(himself)(another)] against the imminent use of unlawful force.

[However, a person is justified in the use of force which is intended or likely to cause death or great bodily harm only if he reasonably believes that such force is necessary to prevent [(imminent death or

great bodily harm to [(himself) (another)])

(the commission of ___)].]"  IPI Criminal

4th No. 24-25.06.

The trial court instructed the jury on second degree murder (belief in justification).  A defendant may be guilty of second degree murder where he believes circumstances exist that would justify the deadly force he uses, but his belief is unreasonable. Defendant argues that the refused instruction was necessary to explain what "justification" meant in the second-degree-murder instruction.

When an instruction on second degree murder (belief in justification) is given, a third proposition is added to the elements of the offense: "That the defendant was not justified in using the force which he used."  IPI Criminal 4th No. 7.06B. Under that instruction the jury could conceivably find the defendant's actions were justified and that he was accordingly not guilty, even though the only argument was that his belief that his conduct was justified was unreasonable and he was guilty of second degree murder.

It has been held that when the evidence supports giving the jury an instruction on the justifiable use of force in self-defense, an instruction for second degree murder should likewise be given.  People v. Toney, 309 Ill. App. 3d 28, 43, 722 N.E.2d 643, 654 (1999), vacated by People v. Toney, 197 Ill. 2d 581, 759

- 18 -

N.E.2d 1 (2001). "We cannot reconcile the trial court's finding sufficient evidence to warrant a self-defense instruction, and thereby allowing the jury to consider whether defendant's subjective belief was reasonable, with the trial court's refusal to allow the jury to consider whether that belief was unreasonable." Toney, 309 Ill. App. 3d at 42, 722 N.E.2d at 654. The converse does not appear to be true, however. The existence of sufficient evidence to warrant a second-degree-murder instruction, that the defendant <u>unreasonably</u> believes that circumstances justify the force he uses, may not amount to sufficient evidence to warrant a self-defense instruction, that the defendant <u>reasonably</u> believed the use of force was justified. That is especially true where a weapon is involved. It is not enough that defendant simply believes his conduct is necessary to defend himself or another. Where a weapon is involved, as in this case, the defendant must reasonably believe that his conduct is necessary to prevent death or great bodily harm. 720 ILCS 5/7-1(a) (West 2004).

We question whether the instruction on justification, as opposed to unreasonable belief in justification, should have been given at all. Defendant does not point to any evidence suggesting that he was acting in self-defense. At trial, defendant made no claim that he was acting in self-defense. Defendant was allowed to make all the arguments to which he was entitled under the instructions that were given. Defendant was not

- 19 -

entitled to argue that he was not guilty because he reasonably believed his conduct was necessary to defend against the imminent use of unlawful force.

## III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment. As part of our judgment, we grant the State its statutory assessment of $75 against defendant as costs of this appeal.

Affirmed.

KNECHT and TURNER, JJ., concur.