NOTICE
Decision filed 06/09/22. The text of this decision may be changed or corrected prior to the filing of a Peti ion for Rehearing or the disposition of the same.

2022 IL App (5th) 200185

NO. 5-20-0185

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | St. Clair County. |
| | ) | |
| v. | ) | No. 11-CF-378 |
| | ) | |
| TRENTON JEFFERSON, | ) | Honorable |
| | ) | John J. O'Gara, |
| Defendant-Appellee. | ) | Judge, presiding. |

JUSTICE CATES delivered the judgment of the court, with opinion.
Justices Welch and Moore concurred in the judgment and opinion.

**OPINION**

¶ 1     The State appeals the trial court's order, which precluded the State from retrying the defendant under a principal theory of guilt for the offense of first degree murder and from presenting evidence and argument in support of such theory. The trial court's order was based upon the doctrine of direct estoppel[1] and gave preclusive effect to a jury's finding on a special interrogatory submitted for sentencing enhancement purposes. This appeal involves a question of whether the doctrine of direct estoppel can be applied to preclude the State from retrying a defendant under both principal and accountability theories of first degree murder where a prior

_____

[1]Throughout the proceedings, the parties and the trial court have used the terms "collateral estoppel," "direct estoppel," and "issue preclusion." The application of issue preclusion within a single claim or cause of action is known as direct estoppel, rather than collateral estoppel. *People v. Wharton*, 334 Ill. App. 3d 1066, 1078 (2002). The same rules apply to both collateral and direct estoppel. *Wharton*, 334 Ill. App. 3d at 1078.

1

jury returned a general verdict of guilty but answered a special interrogatory for sentencing enhancement purposes in the negative. For the following reasons, we reverse and remand for further proceedings.

¶ 2                                I. BACKGROUND

¶ 3    On April 11, 2010, Marcus Gosa was shot and killed in an alley in East St. Louis, Illinois. Nearly a year later, a grand jury indicted the defendant for first degree murder. Approximately one month later, the other suspect in Gosa's murder, Renaldo Brownlee, was killed during an armed robbery. The defendant's first trial resulted in a mistrial because of a hung jury.

¶ 4    At the defendant's second trial, Kiyanna Howard, Brownlee's girlfriend, testified that on the night of the incident, the defendant and Brownlee picked her up around midnight. The defendant drove the vehicle, while Brownlee rode in the front passenger seat. Howard rode in the back seat. At some point during the ride, Howard fell asleep. She awoke upon hearing a car door being slammed shut and observed the defendant standing in front of the car. Howard asked Brownlee what the defendant was doing. Howard lay back down, and seconds later, she heard three or four consecutive gunshots. Following the gunshots, the defendant ran back to the car, reentered the driver's side door, and drove off. According to Howard, as the defendant sped away, he said, "Let's go. Let's go. I think I got that n***." When the defendant got back into the car, Howard stated it appeared as if the defendant was holding something in his hands, but Howard did not see a gun.

¶ 5    Rochelle Davis, the defendant's ex-girlfriend and the mother of his child, testified that she saw the defendant on the night of April 10, 2010, when she was picked up by the defendant and three other individuals, including Brownlee. Davis noticed that the defendant, Brownlee, and one of the other individuals all had 9-millimeter guns. Additionally, Davis indicated that the defendant

2

made several statements to her that led Davis to believe the defendant had killed Gosa. Davis testified that the defendant told her that, on the night of the murder, he saw two boys walking in the alley, he and Brownlee got out of the car, and both started shooting at the boys. Davis further testified that the defendant told her that he heard Gosa scream, and it sounded like he had had fallen over something. Davis also testified she eventually stopped dating the defendant and told him that she had started a new relationship with someone else. The defendant responded by saying, "You tell Dude don't end up like Marcus did."

¶ 6    Reshon Farmer, the defendant's former cellmate at the St. Clair County jail, testified that in May 2011, the defendant spoke about his indictment and admitted he "killed the dude" in a drive-by shooting. The defendant stated he rode in the passenger seat, while his friend drove the vehicle. According to Farmer, only the defendant fired shots. Farmer testified that the defendant never mentioned the victim's name but stated the victim "was from Washington Park and they were into it with Washington Park. So, he [(the defendant)] felt like he, you know, had to do what he did."

¶ 7    The autopsy revealed Gosa died of a single gunshot wound to the back. Police did not recover the bullet that killed Gosa. At the crime scene, police recovered two 9-millimeter shell casings, which ballistics testing demonstrated had been fired from the same gun. No fingerprints were found on the shell casings. The police investigation revealed that the area where the shell casings were found corresponded to the passenger side of the suspect vehicle but was not necessarily indicative of the exact location of where the shots had been fired. It was not known whether the shell casings were discharged from the firearm that caused Gosa's death.

¶ 8    After closing arguments, the trial court gave the following instruction to the jury:

3

"To sustain the charge of First Degree Murder, the State must prove the following propositions:

*First Proposition*: That the defendant, or one for whose conduct he is legally responsible, performed the acts which caused the death of Marcus Gosa; and

*Second Proposition*: That when the defendant, or one for whose conduct he is legally responsible, did so,

he intended to kill or do great bodily harm to Marcus Gosa;

or

he knew that such acts would cause death to Marcus Gosa;

or

he knew that such acts created a strong probability of death or great bodily harm to Marcus Gosa.

If you find from your consideration of all the evidence that each one of these propositions has been proved beyond a reasonable doubt, you should find the defendant guilty.

If you find from your consideration of all the evidence that any one of these propositions has not been proved beyond a reasonable doubt, you should find the defendant not guilty."

¶ 9 The State also requested that the trial court give the instructions for a sentencing enhancement pursuant to section 5-8-1(a)(1)(d)(iii) of the Unified Code of Corrections (730 ILCS 5/5-8-1(a)(1)(d)(iii) (West 2010)). Based on this request, the trial court provided the following instructions to the jury:

"The State has also alleged that during the commission of the offense of First Degree Murder that the defendant was armed with a firearm and personally discharged the firearm that proximately caused death to another person.

* * *

To sustain the allegation made in connection with the offense of First Degree Murder, the State must prove the following proposition:

That during the commission of the offense of First Degree Murder, the defendant was armed with a firearm and personally discharged the firearm that proximately caused death to another person. A person is considered to have 'personally discharged a firearm' when he, while armed with a firearm, knowingly and intentionally fires a firearm causing the ammunition projectile to be forcefully expelled from the firearm.

If you find from your consideration of all the evidence that the above proposition has been proved beyond a reasonable doubt, then you should sign the verdict form finding the allegation was proven.

If you find from your consideration of all the evidence that the above proposition has not been proved beyond a reasonable doubt, then you should sign the verdict form finding the allegation was not proven.

* * *

If you find the defendant is guilty of First Degree Murder, you should then go on with your deliberation to decide whether the State has proved beyond a reasonable doubt the allegation that the defendant was armed with a firearm and personally discharged the firearm that proximately caused death to another person.

5

Accordingly, you will be provided with two verdict forms: 'We, the jury, find the allegation that the defendant was armed with a firearm and personally discharged the firearm that proximately caused death to another person was not proven['] and 'We, the jury, find the allegation that the defendant was armed with a firearm and personally discharged the firearm that proximately caused death to another person was proven.'

From these two verdict forms, you should select the one verdict form that reflects your verdict and sign it as I have stated. Do not write on the other verdict form. Sign only on these verdict forms.

Your agreement on your verdict as to the allegation must also be unanimous. Your verdict must be in writing and signed by all of you, including your foreperson."

¶ 10    The jury found the defendant guilty of first degree murder and answered the special interrogatory in the negative. The trial court sentenced the defendant to 30 years' imprisonment. The defendant appealed.

¶ 11    On appeal, this court determined that portions of Davis's testimony, which are not relevant to this appeal, were improperly admitted and unfairly prejudicial to the defendant. We reversed and remanded for a new trial. See *People v. Jefferson*, 2016 IL App (5th) 130289-U.

¶ 12    On remand, the defendant filed a pretrial motion to limit the State's evidence on retrial. Following a hearing, the trial court issued its order, holding that Howard and Farmer were "limited and precluded from offering any testimony alleging or suggesting that defendant *** fired a gun causing [Gosa's death]." The trial court also ruled the testimony of Davis was limited to exclude statements specifically addressed in this prior court's order, as well as any testimony suggesting or implicating that the defendant acted as the principal. The State appealed pursuant to Illinois Supreme Court Rule 604(a)(1) (eff. Mar. 8, 2016).

6

¶ 13    On appeal, this court held that the trial court erred in granting the defendant's pretrial motion barring the State from presenting evidence supporting a principal liability theory for first degree murder. We reversed and remanded for further proceedings. In doing so, this court declined to decide whether direct estoppel applied to the circumstances of this case. We found that the parties had not provided adequate analysis of the relevant law or how the law should be applied to the facts of this case. We stated: "Although the State has 'successfully' contested the pretrial order, in the absence of a final determination on the merits by this court, defendant is not prevented from raising and relitigating the application of direct estoppel and issue preclusion as it relates to his case on remand." *People v. Jefferson*, 2019 IL App (5th) 170221-U, ¶ 50.

¶ 14    On remand, the defendant filed a "Collateral Estoppel Motion to Bar Evidence" (estoppel motion) to preclude the State from introducing evidence or making argument that the defendant was armed with a firearm and personally discharged the firearm that caused the death of Gosa. The defendant asserted that this issue had been conclusively decided in the jury's prior "verdict" within the context of the special interrogatory. The defendant argued that the doctrine of collateral estoppel barred the State from relitigating or introducing any evidence weighing on the issue of whether the defendant was guilty of first degree murder as a principal because the undisputed evidence was that Gosa died from a single gunshot wound. The defendant contended that the State was collaterally estopped from introducing the following evidence: (1) testimony by Howard that the defendant was "covering something up" when he reentered the vehicle, (2) testimony by Davis that the defendant shot Gosa or that the defendant made statements, the substance of which led Davis to believe the defendant shot Gosa, (3) testimony by Davis that the defendant possessed or was at any time armed with a firearm, and (4) testimony by Farmer that the defendant shot Gosa.

¶ 15    Following a hearing on the defendant's motion, the trial court issued its order granting the

7

defendant's estoppel motion "in part." In its order, the trial court found the issue of whether the defendant personally discharged the firearm that caused Gosa's death was raised and litigated in the defendant's previous trial and was the same issue the defendant now sought to preclude. The trial court further found the jury's negative finding as to the special interrogatory was a "critical and necessary" part of the final judgment. The trial court ordered that the State was collaterally estopped from proceeding with evidence, argument, or a theory that proof exists, beyond a reasonable doubt, that the defendant was armed with a firearm and personally discharged the firearm that proximately caused Gosa's death.

¶ 16     The trial court determined, however, that the testimony of Howard and Davis was admissible because it was consistent with a theory of accountability. As to Farmer's testimony, the trial court indicated in its order that it was required to hold a hearing pursuant to section 115-21 of the Code of Criminal Procedure of 1963 (725 ILCS 5/115-21 (West 2020)) to determine whether, as an informant, Farmer's testimony was reliable. The trial court further indicated that if Farmer's testimony was allowed, the trial court would determine the scope of the testimony consistent with its order. The State filed an interlocutory appeal pursuant to Rule 604(a)(1).

¶ 17                                    II. ANALYSIS

¶ 18     Before we may address the merits of the State's appeal, we must determine whether this court has jurisdiction to hear this appeal. The State asserts two bases for this court's jurisdiction under Rule 604(a)(1). First, the State contends the trial court's order was grounded upon double jeopardy principles and was, "for all intents and purposes," an order of dismissal pursuant to section 3-4 of the Criminal Code of 2012 (720 ILCS 5/3-4 (West 2018)). Alternatively, the State contends we have jurisdiction because the trial court's order effectively suppresses evidence. The defendant argues that this court lacks jurisdiction because the trial court's order does not bar the

8

State from prosecuting the defendant for first degree murder and does not have the substantive effect of dismissing that charge or suppressing evidence. Whether a reviewing court has jurisdiction to consider an appeal is a question of law, which we review *de novo*. *People v. Brindley*, 2017 IL App (5th) 160189, ¶ 15.

¶ 19 Rule 604(a)(1), in relevant part, allows the State to bring an interlocutory appeal from a pretrial order that has the "substantive effect" of suppressing evidence. Ill. S. Ct. R. 604(a)(1) (eff. Mar. 8, 2016). Evidence is suppressed within the meaning of Rule 604(a)(1) if the trial court's order prevents the State from presenting information to the fact finder. *People v. Drum*, 194 Ill. 2d 485, 492 (2000).

¶ 20 Here, the trial court ordered that the State was precluded from pursuing a theory of principal liability and from presenting evidence or argument that the defendant was armed with a firearm and personally discharged the firearm that proximately caused Gosa's death. Accordingly, the trial court's order had the "substantive effect" of suppressing evidence, and the State may appeal therefrom pursuant to Rule 604(a)(1). Thus, we find we have jurisdiction to consider the substantive issue raised in this appeal.

¶ 21 We now turn to the merits of the State's appeal. The parties dispute whether, under the doctrine of direct estoppel, the jury's negative finding on the special interrogatory submitted in this case can preclude the State from pursuing a principal theory of guilt on the charge of first degree murder at the defendant's retrial.

¶ 22 Under the doctrine of direct estoppel, "when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Ashe v. Swenson*, 397 U.S. 436, 443 (1970). The party seeking to invoke direct estoppel must show that (1) the issue sought to be precluded was raised and litigated

9

in a previous proceeding, (2) the determination of the issue was a critical and necessary part of the final judgment in a prior trial, and (3) the issue is the same one decided in the previous trial. *People v. Jones*, 207 Ill. 2d 122, 139 (2003). Where a defendant claims that a previous acquittal bars a subsequent prosecution for a related offense, the court must examine the record of the prior proceedings and determine whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration. *Jones*, 207 Ill. 2d at 139. The State's inability to appeal adverse judgments in criminal cases calls for "guarded application" of the doctrine of direct estoppel. See *Bravo-Fernandez v. United States*, 580 U.S. 5, ___, 137 S. Ct. 352, 358 (2016).

¶ 23    Here, the defendant sought to preclude the State from prosecuting a principal theory of guilt on the charge of first degree murder and from presenting evidence in support of that theory, on retrial. The trial court found that the issue the defendant sought to preclude—that the defendant was armed with a firearm and discharged the firearm that killed Gosa—was raised and litigated in the defendant's previous trial. The trial court further found that this issue was the same issue the defendant now sought to preclude and that the jury's determination was a critical and necessary part of the final judgment in the defendant's previous trial. The trial court concluded that the State was estopped from proceeding, and presenting evidence and argument, on a principal theory of first degree murder. Thus, the trial court found that, under the doctrine of direct estoppel, the jury's negative finding on the special interrogatory had a preclusive effect on the State's ability to retry the defendant as a principal. We disagree.

¶ 24    The purpose of special interrogatories, like the one here, is to comply with *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and enable the State to obtain a sentence enhancement. See *People v. Jackson*, 372 Ill. App. 3d 605, 610 (2007). *Apprendi* requires that any fact, other than a

10

prior conviction, increasing the penalty for an offense beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt. *Apprendi*, 530 U.S. at 490. The appellate court has consistently refused "to consider the answer to the 'special interrogatory' beyond the purpose for which it was asked—whether there could be a sentence enhancement." *Jackson*, 372 Ill. App. 3d at 612; see also *People v. Reed*, 396 Ill. App. 3d 636, 646 (2009); *People v. Allen*, 2022 IL App (1st) 190158, ¶ 45. Because the special interrogatory here applied only to whether a sentence enhancement should be applied, and not to the general verdict of guilt, the special interrogatory did not have the effect of precluding the defendant from being retried under both principal and accountability theories of first degree murder. See *Allen*, 2022 IL App (1st) 190158, ¶ 83 ("[T]he jury's responses to the special interrogatory related only to defendant's sentence enhancement and not to the general verdicts of guilt and, as such, those responses have no bearing on the State's ability to retry [the defendant] for first degree murder on the same basis as in the original trial."). Therefore, the doctrine of direct estoppel does not apply to the circumstances presented in this case.

¶ 25    In sum, we reverse the judgment of the trial court and remand for further proceedings. In the event of a retrial, the State is not estopped from prosecuting a principal theory of guilt for the offense of first degree murder or from presenting evidence and argument of such theory because of the jury's finding on the special interrogatory. The State may not introduce Davis's testimony that this court found was improperly admitted and unfairly prejudicial in *Jefferson*, 2016 IL App (5th) 130289-U.

¶ 26    Reversed and remanded.

11

2022 IL App (5th) 200185

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of St. Clair County, No. 11-CF-378; the Hon. John J. O'Gara, Judge, presiding. |
| **Attorneys for Appellant:** | James A. Gomric, State's Attorney, of Belleville (Patrick Delfino and Patrick D. Daly, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| **Attorneys for Appellee:** | James E. Chadd, Ellen J. Curry, and Richard J. Whitney, of State Appellate Defender's Office, of Mt. Vernon, for appellee. |