# Illinois Official Reports

## Supreme Court

---

**People v. Jefferson, 2024 IL 128676**

---

| | |
|---|---|
| Caption in Supreme Court: | THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. TRENTON JEFFERSON, Appellant. |
| Docket No. | 128676 |
| Filed | June 6, 2024 |
| Decision Under Review | Appeal from the Appellate Court for the Fifth District; heard in that court on appeal from the Circuit Court of St. Clair County, the Hon. John J. O'Gara, Judge, presiding. |
| Judgment | Appellate court judgment affirmed. Circuit court judgment reversed. |
| Counsel on Appeal | James E. Chadd, State Appellate Defender, Ellen J. Curry, Deputy Defender, and Richard J. Whitney, Assistant Appellate Defender, of the Office of the State Appellate Defender, of Mt. Vernon, for appellant. |
| | Kwame Raoul, Attorney General, of Springfield (Jane Elinor Notz, Solicitor General, and Katherine M. Doersch and Joshua M. Schneider, Assistant Attorneys General, of Chicago, of counsel), for the People. |

Justices                    JUSTICE CUNNINGHAM delivered the judgment of the court, with opinion.

Chief Justice Theis and Justices Neville, Overstreet, Holder White, Rochford, and O'Brien concurred in the judgment and opinion.

**OPINION**

¶ 1        The defendant, Trenton Jefferson, was tried before a jury in the circuit court of St. Clair County for first degree murder. At the close of trial, the jury was instructed on first degree murder and was also given a special interrogatory asking whether the State had proven beyond a reasonable doubt that Jefferson personally discharged a firearm that proximately caused the victim's death. The jury returned a general verdict finding Jefferson guilty of first degree murder but answered the special interrogatory in the negative. On appeal, the appellate court reversed Jefferson's conviction for reasons unrelated to the special interrogatory and remanded the case for a new trial.

¶ 2        In the trial court, Jefferson filed a motion arguing that, under the doctrine of issue preclusion as embodied in the double jeopardy clause of the federal constitution,[1] the jury's answer to the special interrogatory barred the State from arguing or presenting evidence in his retrial that he personally discharged a firearm that proximately caused the death of the victim. The trial court granted the motion, and the State appealed. The appellate court reversed the judgment of the trial court, holding that the jury's answer to the special interrogatory did not bar the State from arguing or presenting evidence that Jefferson discharged the firearm. 2022 IL App (5th) 200185. For the reasons that follow, we affirm the judgment of the appellate court.

¶ 3                              BACKGROUND
¶ 4        In the early morning hours of April 11, 2010, 17-year-old Marcus Gosa was shot and killed in an alley in East St. Louis, Illinois. A grand jury subsequently indicted Jefferson for Gosa's murder. Approximately one month after Jefferson was indicted, a second suspect in Gosa's murder, Renaldo Brownlee, was killed during an unrelated armed robbery.

¶ 5        Jefferson's first trial, held in September 2012, resulted in a mistrial after the jury could not reach a unanimous verdict. Jefferson's second trial took place in February 2013. At that trial, Rochelle Davis, Jefferson's ex-girlfriend and the mother of his child, testified that on the night of April 10, 2010, Jefferson and three other people, including Brownlee, picked her up in a green Buick. Brownlee sat in the front passenger seat, and Jefferson sat in the back seat. Davis testified that she knew Jefferson sometimes carried a black, 9-millimeter handgun and that,

---

[1]Although the parties primarily use the terms "collateral estoppel" or "direct estoppel" in this court, the United States Supreme Court has indicated that "issue preclusion" is the preferred term when discussing the double jeopardy clause. *Bravo-Fernandez v. United States*, 580 U.S. 5, 7 n.1 (2016); see, *e.g.*, *Taylor v. Sturgell*, 553 U.S. 880, 892 n.5 (2008) ("issue preclusion encompasses the doctrines once known as 'collateral estoppel' and 'direct estoppel' "). For consistency, we will use the term "issue preclusion" in this opinion.

when she joined Jefferson in the back seat of the car, he had that gun with him. Davis stated that Brownlee was also carrying a 9-millimeter handgun. Davis testified that the group drove to Jefferson's aunt's house, where Davis was dropped off. Jefferson then left with the others in the car.

¶ 6 Kiyanna Howard, who had started dating Brownlee a few days before the murder, testified that Jefferson and Brownlee picked her up around midnight in the same car that Davis had been in earlier that night. The three then drove around town, listening to music. Jefferson was driving the vehicle, Brownlee rode in the front passenger seat, and Howard rode in the back seat. At some point during the drive, Howard fell asleep. She stated that she awoke when she heard a car door slam shut. Howard saw Jefferson standing in front of the car. Howard asked Brownlee what Jefferson was doing. She got some kind of response and then lay back down. A few seconds later, she heard three or four gunshots. Following the gunshots, Howard sat up and saw Jefferson run back to the car and reenter the driver's side door. According to Howard, as Jefferson sped away, he said, "Let's go. Let's go. I think I got that n***." Howard stated that when Jefferson got back into the car, it appeared to her as if he was holding something in his hands. However, she denied ever seeing a gun. Howard admitted that, in an earlier statement given to police, she told them Jefferson said, "I think I hit somebody" and "I think I got [d]ude." Howard stated that, after the shooting, she, Jefferson, and Brownlee drove to a motel, where they stayed until about noon. Jefferson then drove Howard and Brownlee to Brownlee's grandmother's house and dropped them off.

¶ 7 Davis testified that, at some point after the murder, Jefferson made several statements to her that led her to believe he had killed Gosa. Davis stated that Jefferson told her that, on the night of the murder, he saw two boys walking in the alley and that both he and Brownlee got out of the car and started shooting at the boys. Davis further testified that Jefferson told her he heard Gosa scream and that it sounded like he had fallen over something. Davis also stated that she eventually stopped dating Jefferson and told him she had started a new relationship with someone else. Jefferson responded by saying, "You tell [d]ude don't end up like Marcus did."

¶ 8 A few days after the murder, Jefferson was apprehended by police officers in the same green Buick that had been identified by Davis and Howard. After he was arrested and charged with Gosa's murder, Jefferson shared a jail cell with Reshon Farmer at the St. Clair County jail. Farmer testified against Jefferson as part of a plea deal with the State. According to Farmer, in May 2011, Jefferson admitted to him he "killed the dude" in a drive-by shooting because "they was into it with them." Jefferson told Farmer he rode in the passenger seat, while his friend Brownlee drove the vehicle. According to Farmer, only Jefferson fired shots. Farmer stated Jefferson never mentioned the victim's name, but he did say the victim "was from Washington Park and they was into it with Washington Park. So, [Jefferson] felt like he, you know, had to do what he did." According to Farmer, although Jefferson did not personally know Gosa, he was familiar with him from Washington Park.

¶ 9 An autopsy revealed Gosa died of a single gunshot wound to the back. Police did not recover the bullet that killed Gosa. At the crime scene, police recovered two 9-millimeter shell casings, which ballistics testing established had been fired from the same gun. No fingerprints were found on the shell casings. It was not known whether the shell casings were discharged from the firearm that caused Gosa's death. At the close of the State's case, Jefferson moved for a directed verdict, which was denied. Jefferson did not present any evidence.

¶ 10    During closing arguments, the State asserted that Jefferson had shot and killed Gosa and argued to the jury that the three witnesses who had testified supported that conclusion. The State also told the jury that, if it believed the testimony of Davis that both Jefferson and Brownlee got out of the car and fired shots, Jefferson would still be guilty of first degree murder under a theory of accountability, even if he did not fire the weapon that killed Gosa.

¶ 11    Following closing arguments, the jury was instructed that, to find Jefferson guilty of murder, it had to find that the evidence proved beyond a reasonable doubt that the "defendant, or one for whose conduct he was legally responsible," (1) performed the acts that caused Gosa's death and (2) intended to kill or do great bodily harm to Gosa, knew that such acts would cause Gosa's death, or knew that such acts created a strong probability of death or great bodily harm to Gosa.

¶ 12    The State also requested that the trial court instruct the jury regarding a firearm sentencing enhancement pursuant to section 5-8-1(a)(1)(d)(iii) of the Unified Code of Corrections (730 ILCS 5/5-8-1(a)(1)(d)(iii) (West 2010) (providing a sentence enhancement of 25 years to natural life "if, during the commission of the offense, the person personally discharged a firearm that proximately caused *** death to another person")). Based on this request, the trial court provided the following instruction to the jury:

> "The State has also alleged that during the commission of the offense of First Degree Murder the defendant was armed with a firearm and personally discharged the firearm that proximately caused death to another person.
>
> If you find the defendant is guilty of First Degree Murder, you should then go on with your deliberation to decide whether the State has proved beyond a reasonable doubt the allegation that the defendant was armed with a firearm and personally discharged the firearm that proximately caused death to another person.
>
> Accordingly, you will be provided with two verdict forms: 'We, the jury, find the allegation that the defendant was armed with a firearm and personally discharged the firearm that proximately caused death to another person was not proven['] and 'We, the jury, find the allegation that the defendant was armed with a firearm and personally discharged the firearm that proximately caused death to another person was proven.'
>
> From these two verdict forms, you should select the one verdict form that reflects your verdict and sign it as I have stated. Do not write on the other verdict form. Sign only one of these verdict forms.
>
> Your agreement on your verdict as to the allegation must also be unanimous. Your verdict must be in writing and signed by all of you, including your foreperson."

¶ 13    The jury returned a general verdict finding Jefferson guilty of first degree murder. The jury also answered the special interrogatory in the negative, returning the verdict form stating that the State failed to prove beyond a reasonable doubt that Jefferson personally discharged the firearm that proximately caused Gosa's death. Thereafter, the trial court sentenced Jefferson to 30 years' imprisonment. Jefferson appealed.

¶ 14    On appeal, the appellate court held that portions of Davis's testimony (which are not at issue here) were unfairly prejudicial to Jefferson and were improperly admitted by the trial court. *People v. Jefferson*, 2016 IL App (5th) 130289-U. The appellate court reversed Jefferson's conviction and remanded for a new trial.

- 4 -

¶ 15 On remand, Jefferson filed a pretrial motion in which he pointed to certain statements in the appellate court's order that had discussed the jury's answer to the special interrogatory. Based on these statements, the motion argued that the State was barred from arguing or presenting any evidence that he personally shot and killed Gosa. Invoking the law of the case doctrine, the trial court granted Jefferson's motion. The State appealed the trial court's order pursuant to Illinois Supreme Court Rule 604(a)(1) (eff. Mar. 8, 2016).

¶ 16 On that appeal, the appellate court held that the trial court erred in granting Jefferson's motion based on the *law of the case doctrine* because nothing in its previous decision had barred the State from retrying Jefferson under a principal liability theory for first degree murder. *People v. Jefferson*, 2019 IL App (5th) 170221-U, ¶ 31. The appellate court also noted that, for the first time on appeal, Jefferson had argued that the doctrine of issue preclusion as embodied in the double jeopardy clause of the federal constitution (U.S. Const., amend. V) prevented the State from arguing or presenting any evidence suggesting that he fired the shot that murdered Gosa. *Jefferson*, 2019 IL App (5th) 170221-U, ¶ 33. However, the court indicated that the parties had provided the court "with little or no analysis" of the doctrine, and therefore, the court declined to fully consider the issue. *Id.* ¶ 49. The appellate court reversed the trial court's order and remanded the case to the trial court for further proceedings. The appellate court noted, however, that because it had not made a final determination on the merits of Jefferson's preclusion argument, he was not prevented from raising and relitigating the application of "issue preclusion as it relates to his case on remand." *Id.* ¶ 50.

¶ 17 Returning again to the trial court, Jefferson filed a "Collateral Estoppel Motion to Bar Evidence" in which he argued that, under *Ashe v. Swenson*, 397 U.S. 436 (1970), the doctrine of issue preclusion as embodied within the double jeopardy clause of the federal constitution barred the State from arguing or introducing evidence in his retrial that he personally discharged the firearm that proximately caused the death of Gosa. The motion acknowledged that issue preclusion "comes into effect only where it can be ascertained with certainty that the verdict in the first case necessarily determined a particular fact" (*People v. Haran*, 27 Ill. 2d 229, 235 (1963)) but maintained that a factual determination had been made by the jury here. The motion pointed out that the undisputed evidence from Jefferson's previous trial had established that Gosa died from a single gunshot wound and that only one other person, Brownlee, could have fired that shot. Further, the motion noted, the State had expressly argued to the jury that it could find Jefferson guilty under a theory of accountability. Given the jury's negative answer to the special interrogatory, the motion asserted that the jury must have found Jefferson guilty of first degree murder based on accountability. As Jefferson's counsel stated to the trial court while arguing in support of the motion: "If you look at all of these circumstances, the only conclusion that that jury could have drawn would have been that [Jefferson] was only accountable and he didn't fire the gun."

¶ 18 Emphasizing the unique circumstances of this case, Jefferson's motion maintained that the jury's negative answer to the special interrogatory, considered together with the general verdict, amounted to a factual determination by the jury that Brownlee fired the fatal shot, not Jefferson. Because the jury had made this factual determination, the motion argued the doctrine of issue preclusion barred the State from introducing any evidence contradicting it, including any statements by Davis and Howard that expressly or implicitly indicated that Jefferson shot Gosa, as well as Farmer's testimony that Jefferson fired the fatal shot. The motion did not

argue that the State was barred from retrying Jefferson for the murder of Gosa but asserted that he could only be retried under a theory of accountability.

¶ 19        Following a hearing, the trial court granted Jefferson's motion "in part."[2] In its order, the trial court stated it agreed with Jefferson that the jury had found him guilty in his previous trial based on accountability, noting that "[t]he State told the jury to complete the verdict this way if Defendant was guilty by accountability. They did just that." Concluding that the jury had "made a factual determination which carries the weight and effect of issue preclusion," the trial court determined the State was barred from "attempting to contradict that explicit finding." The court held the State was barred "from proceeding on a theory, and presenting evidence or argument that proof exists beyond a reasonable doubt, that [Jefferson] was armed with a firearm and personally discharged the firearm that proximately caused the death of Marcus Gosa."

¶ 20        The court stated in its order that it was granting Jefferson's motion "in part" because the State was still allowed to argue and present evidence that Jefferson was accountable for the murder of Gosa. The court then identified several statements made by Howard and Davis in the previous trial that were "consistent with a theory of accountability" and that could again be introduced by the State in the retrial, so long as the State made no attempt to argue that the testimony established Jefferson's guilt under a theory of principal liability. The court did not discuss the contents of Farmer's previous testimony except to note that, because Farmer was a jailhouse informant, his testimony would be subject to section 115-21 of the Code of Criminal Procedure of 1963 (725 ILCS 5/115-21 (West 2020)), a provision that requires the trial court to conduct a hearing to determine whether an informant's testimony is reliable.

¶ 21        Lastly, the trial court noted that, upon Jefferson's request, the jury could "be cautioned and instructed that there was insufficient evidence that proof exists beyond a reasonable doubt that [Jefferson] was armed with a firearm and personally discharged the firearm that proximately caused the death of Marcus Gosa." The State again filed an interlocutory appeal pursuant to Rule 604(a)(1).

¶ 22        On appeal, the appellate court again reversed the judgment of the trial court and remanded the case to the trial court. 2022 IL App (5th) 200185. The appellate court first rejected the State's argument that the court lacked jurisdiction under Rule 604(a)(1). The appellate court concluded that the trial court's order had the substantive effect of suppressing evidence as required for appeal under Rule 604(a)(1) and, therefore, jurisdiction had been established. *Id.* ¶ 20.

¶ 23        As to the merits of the State's appeal, the appellate court disagreed with the trial court's finding that, under the doctrine of issue preclusion, the jury's negative answer to the special interrogatory had a preclusive effect on the State's ability to retry Jefferson as a principal. *Id.* ¶ 23. The appellate court noted the purpose of the special interrogatory was to comply with *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and to enable the State to obtain a sentence enhancement. 2022 IL App (5th) 200185, ¶ 24. The appellate court then stated that courts have

_____

[2]During the hearing on Jefferson's motion, the State conceded that, in light of the jury's negative answer to the special interrogatory, the State "could not seek a sentencing enhancement in the future" and Jefferson "cannot get the enhancement ever again." The State does not take a different position before this court. See *Jefferson*, 2019 IL App (5th) 170221-U, ¶¶ 15-17 (noting the State's identical concession in that appeal).

- 6 -

consistently refused " 'to consider the answer to the "special interrogatory" beyond the purpose for which it was asked—whether there could be a sentence enhancement.' " *Id.* (quoting *People v. Jackson*, 372 Ill. App. 3d 605, 612 (2007)). The appellate court concluded that, "[b]ecause the special interrogatory here applied only to whether a sentence enhancement should be applied, and not to the general verdict of guilt, [it] did not have the effect of precluding [Jefferson] from being retried under both principal and accountability theories of first degree murder." *Id.* Accordingly, the appellate court reversed the judgment of the trial court. *Id.* ¶ 25.

¶ 24    We granted Jefferson's petition for leave to appeal pursuant to Illinois Supreme Court Rule 315(a) (eff. Oct. 1, 2021).

¶ 25                                  ANALYSIS
¶ 26                          Appellate Court Jurisdiction
¶ 27    Jefferson initially contends the appellate court lacked jurisdiction under Rule 604(a)(1) because the trial court's order did not have the "substantive effect" of suppressing evidence as required for the State to appeal the order under that rule. See *In re K.E.F.*, 235 Ill. 2d 530, 537 (2009). An order suppresses evidence within the meaning of Rule 604(a)(1) when it " 'prevents [the] information from being presented to the fact finder.' " *Id.* at 538 (quoting *People v. Drum*, 194 Ill. 2d 485, 492 (2000)). When the order leaves open an avenue for admission of the evidence in question, it does not suppress evidence. *Id.* We review *de novo* the issue of whether the trial court's order suppressed evidence and thereby conferred jurisdiction upon the appellate court. *Id.*

¶ 28    In this case, the trial court's order expressly barred the State from presenting evidence that Jefferson personally discharged the firearm that proximately caused the death of Gosa. Nevertheless, Jefferson maintains that this was insufficient to establish appellate jurisdiction under Rule 604(a)(1). Jefferson notes that the trial court's order identified specific statements previously made by Davis and Howard that could be admitted in the retrial under a theory of accountability but did not identify with the same specificity what statements of Davis and Howard were to be suppressed. Jefferson argues that the trial court's order "did not bar a single identifiable item of evidence" and, therefore, the appellate court lacked jurisdiction under Rule 604(a)(1). We disagree.

¶ 29    As the State points out, trial courts often make rulings that suppress proffered testimony without attempting to identify every possible statement the witness might make at trial. This is necessarily so because it is impossible to know beforehand exactly what a witness will say, or attempt to say, when called to testify. Simply because the trial court's order in this case did not set forth all the possible statements the witnesses might make does not mean that the trial court's order failed to suppress evidence. Further, even if the trial court's order did not say so explicitly, it clearly had the effect of suppressing Farmer's testimony, since he had stated at the previous trial that Jefferson admitted shooting Gosa. By its plain terms, the trial court's order had the substantive effect of suppressing evidence. Accordingly, the appellate court had jurisdiction under Rule 604(a)(1) to address the merits of the State's appeal.

¶ 30                                    Issue Preclusion

¶ 31         In the appeal now before us, the appellate court held that, as a matter of law, a jury's answer to a special interrogatory submitted by the State for the purpose of seeking a sentencing enhancement may never have preclusive effect in a subsequent trial. 2022 IL App (5th) 200185, ¶ 24. However, in this court, the State does not primarily defend this line of reasoning. Instead, the State's principal argument is that the trial court erred in applying the issue preclusion component of the federal double jeopardy clause as recognized by the United States Supreme Court in *Ashe*. Jefferson, in response, argues that the trial court did not err in its application of *Ashe* or the issue preclusion doctrine. Given the nature of the parties' arguments, we begin with *Ashe*.

¶ 32         In *Ashe*, three or four masked men broke into a house in the town of Lee's Summit, Missouri, and robbed six men who were playing poker in the basement. *Ashe*, 397 U.S. at 437. The defendant was charged with separate counts of armed robbery with respect to each of the poker players, but at trial, the State of Missouri proceeded on only one of the robbery charges against a single victim. *Id.* at 438. At the close of trial, the judge instructed the jury that the defendant could be found guilty on a theory of accountability, stating that, if the jury found that the defendant was one of the participants in the armed robbery, then "he was guilty under the law even if he had not personally robbed [the victim]." *Id.* at 439. The jury found the defendant " 'not guilty due to insufficient evidence.' " *Id.* Shortly thereafter, the State tried the defendant for robbing a second poker player and obtained a conviction. *Id.* at 439-40.

¶ 33         Although the second prosecution was technically a different offense, since it involved a different victim, the Supreme Court nevertheless held that the second prosecution violated the double jeopardy clause of the fifth amendment. That provision states, "No person shall *** be subject for the same offence to be twice put in jeopardy of life or limb ***." U.S. Const., amend. V.

¶ 34         In so holding, the Supreme Court found that the doctrine of issue preclusion or collateral estoppel is embodied within the double jeopardy clause. *Ashe*, 397 U.S. at 444-45. The Court described this doctrine as "mean[ing] simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Id.* at 443. Explaining that the doctrine should be applied in criminal cases with "realism and rationality," and not with a "hypertechnical and archaic approach," the Court stated:

             "Where a previous judgment of acquittal was based upon a general verdict, as is usually the case, this approach requires a court to examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration." (Internal quotation marks omitted.) *Id.* at 444.

¶ 35         Based on an evaluation of the record, the Supreme Court determined there was no question that the victim had been robbed and that the only contested issue in the first trial had been the identity of the robbers. *Id.* at 445. Since the jury had been instructed that the defendant could be found guilty under an accountability theory, the defendant's acquittal necessarily meant that the jury had found as an "ultimate fact" (*id.* at 443) that "the defendant was not one of the robbers" (*id.* at 446). The Court concluded that the doctrine of issue preclusion barred the State

from prosecuting the defendant for the robbery of another poker player since the second jury would have to again decide whether the defendant participated in the robbery. *Id.* at 445. Accordingly, the Court held that the defendant's conviction had been obtained in violation of the double jeopardy clause. *Id.* at 447.

¶ 36    Jefferson notes that *Ashe* was discussed by this court in *People v. Jones*, 207 Ill. 2d 122 (2003). There, this court stated that a defendant seeking to invoke the doctrine of issue preclusion as embodied within the double jeopardy clause must show that

> "(1) the issue was raised and litigated in a previous proceeding; (2) that the determination of the issue was a critical and necessary part of the final judgment in a prior trial; and (3) the issue sought to be precluded in a later trial is the same one decided in the previous trial." *Id.* at 139.

Applying this rule, Jefferson maintains that the issue of whether he fired the shot that killed Gosa was raised and rejected in his previous trial, as the jury answered the special interrogatory in the negative; that this was a critical and necessary part of the final judgment; and that this is the same issue he seeks to preclude in his retrial. As he did in the trial court, Jefferson again stresses that he is not seeking to bar the State from retrying him for murder. Rather, he is seeking only to bar the State from relitigating a theory of criminal liability that he contends was rejected at his previous trial, *i.e.*, that he was guilty of the murder of Gosa as a principal. Jefferson contends that, under a "[s]traightforward application" of *Ashe* and *Jones*, "the State may retry [him] for murder, but it may not reassert the issue of ultimate fact that he fired the fatal bullet."

¶ 37    The State disagrees with Jefferson's statement of the issue preclusion doctrine recognized in *Ashe* and, in support, points to the Supreme Court's decision in *Currier v. Virginia*, 585 U.S. 493 (2018) (plurality opinion). In *Currier*, the defendant challenged his conviction for unlawful possession of a firearm by a felon by arguing, in part, that the conviction was obtained in violation of the issue preclusion component of the double jeopardy clause. *Id.* at 497-98. The Supreme Court upheld his conviction for reasons not relevant here. *Id.* at 510. However, eight of the justices addressed the scope of the issue preclusion doctrine and the Court's holding in *Ashe*, and on this question, they were evenly divided.

¶ 38    Justice Gorsuch, in a plurality opinion joined by three other members of the Court, rejected the idea that the double jeopardy clause prevents "the parties from retrying any issue or introducing any evidence about a previously tried issue." *Id.* at 503 (opinion of Gorsuch, J., joined by Roberts, C.J., and Thomas and Alito, JJ.). Rather, according to Justice Gorsuch, the double jeopardy clause only bars retrial of offenses, not issues. *Id.* at 504 ("the Clause speaks not about prohibiting the relitigation of issues or evidence but offenses"). Justice Gorsuch concluded that *Ashe* did not import issue preclusion principles from civil cases into the double jeopardy clause but, instead, held only that, "in narrow circumstances, the retrial of an issue can be considered tantamount to the retrial of an offense" and thus prohibited by the double jeopardy clause. *Id.* at 506. Justice Gorsuch also questioned, as a general matter, whether the doctrine of issue preclusion could be meaningfully employed in criminal cases, noting, among other things, that the doctrine usually does not bar the relitigation of issues when the party against whom preclusion is being sought could not have obtained review of the judgment in the initial action and that the State cannot obtain appellate review of acquittals. *Id.* at 507-08.

¶ 39    Justice Ginsburg, also joined by three members of the Court, dissented. *Id.* at 512-26 (Ginsburg, J., dissenting, joined by Breyer, Sotomayor, and Kagan, JJ.). Stressing the importance given to the preservation of the finality of judgments under the double jeopardy clause, Justice Ginsburg concluded that *Ashe* did incorporate civil, issue preclusion principles into the double jeopardy clause. *Id.* at 515. Justice Ginsburg noted that *Ashe* explicitly described its holding in terms of preventing the relitigation of an "issue" (*id.*) and stated that *Ashe* stands for the proposition that "issue preclusion prevents relitigation of a previously rejected theory of criminal liability" even if it does not bar a successive trial (*id.* at 521). Justice Ginsburg concluded that, within the limits of the double jeopardy clause, the prosecution is free " 'to charge an acquitted defendant with other crimes claimed to arise from the same or related conduct; but it may not prove the new charge by asserting facts necessarily determined against it on the first trial.' " *Id.* at 525 (quoting *United States v. Kramer*, 289 F.2d 909, 916 (2d Cir. 1961)).

¶ 40    Essentially adopting the position advanced by Justice Gorsuch, the State contends here that the application of issue preclusion under the double jeopardy clause is narrow. According to the State, under the double jeopardy clause, issue preclusion only applies when, as was the case in *Ashe*, there is a shared element between offenses. In this situation, according to the State, the subsequent prosecution is barred because, to convict in the second trial, the jury would have to reach a contrary conclusion on the shared element from the first trial. In other words, the double jeopardy clause bars the successive prosecution because it would be "tantamount to the retrial" of the first offense. *Id.* at 506 (opinion of Gorsuch, J., joined by Roberts, C.J., and Thomas and Alito, JJ.). Beyond this limited circumstance, however, the State argues that issue preclusion principles have no application under the double jeopardy clause.

¶ 41    Applying that rule here, the State contends that the jury's answer to the special interrogatory has no preclusive effect that would prevent it from presenting evidence or argument in Jefferson's retrial because the issue addressed in the special interrogatory— whether Jefferson personally discharged the firearm that caused the victim's death—is not an element the State must prove beyond a reasonable doubt to prove defendant guilty of first degree murder. See 720 ILCS 5/9-1(a)(1), (2) (West 2010) (first degree murder requires proof that the defendant or someone for whose conduct he is legally responsible caused the victim's death and had the requisite intent). For this reason, the State contends the trial court erred in granting Jefferson's motion to suppress evidence.

¶ 42    Jefferson, in response, argues that the State's reading of *Ashe* would "radically circumscribe" the issue preclusion doctrine, "essentially eliminating [it] from our criminal jurisprudence." Jefferson again asserts that, "under *Ashe*, the State may retry [him] for murder, but it may not reassert the issue of ultimate fact that he fired the fatal bullet, because that issue has already been resolved."

¶ 43    Although the State does not say so explicitly, its argument necessarily suggests that, to the extent this court's decision in *Jones* viewed *Ashe* as requiring that civil, issue preclusion principles be applied in all criminal cases as a general matter, *Jones* was incorrectly decided. However, we need not decide whether the State is correct or revisit this court's decision in *Jones*. Even applying the civil doctrine of issue preclusion as Jefferson asks us to do, he cannot prevail here.

¶ 44    Standing alone, the jury's negative answer to the special interrogatory in this case is not a finding of fact. Rather, it is simply a determination by the jury that the State failed to prove the sentencing enhancement beyond a reasonable doubt. See, *e.g.*, *United States v. Watts*, 519 U.S. 148, 155 (*per curiam*) (" '[A]n acquittal is not a finding of any fact.' " (quoting *United States v. Putra*, 78 F.3d 1386, 1394 (9th Cir. 1996) (Wallace, C.J., dissenting))). Jefferson argues, however, that when all of the circumstances of the case are considered, the jury's answer to the special interrogatory does amount to a factual determination, just as the jury's acquittal in *Ashe* amounted to a factual determination that the defendant was not present at the crime scene in that case.

¶ 45    Jefferson again notes that the undisputed evidence from his previous trial showed that Gosa died from a single gunshot wound and that the only other person besides Jefferson who could have fired that shot was Brownlee. Further, at his trial the State argued, and the jury was instructed, that Jefferson could be found guilty under a theory of accountability. Jefferson maintains that, when these circumstances are viewed with "realism and rationality" (*Ashe*, 397 U.S. at 444), the jury's negative answer to the special interrogatory must mean that it concluded he could not have "acted as the principal in the murder." In other words, the jury's answer to the special interrogatory was a factual determination that Brownlee, rather than Jefferson, fired the shot that killed Gosa. That being the case, Jefferson argues that the State cannot, under principles of issue preclusion, attempt to challenge that factual determination again. See *id.* at 443 ("when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit").

¶ 46    The difficulty with Jefferson's argument is that there is another way in which the jury's answer to the special interrogatory may be understood. Under Illinois law, a jury may "return a general verdict of guilty even if there is no juror unanimity with regard to *the means* by which the murder was committed." (Emphasis in original.) *People v. Smith*, 233 Ill. 2d 1, 16 (2009). In this case, some of the jurors may have believed that Jefferson acted as a principal and fired the shot that killed Gosa, while others may have believed that Brownlee fired the shot and Jefferson was guilty by accountability. It is also possible, however, that the jurors were simply unable to decide which of the two fired the shot but knew, beyond a reasonable doubt, that either Jefferson or Brownlee did. That was sufficient to find Jefferson guilty. See *id.*

¶ 47    The jury's answer to the special interrogatory in this case may be viewed as a factual determination that Brownlee, and not Jefferson, shot Gosa. But it may also be viewed as something quite different—an indication that the jury was uncertain as to whether Jefferson or Brownlee shot Gosa but that it had determined, beyond a reasonable doubt, that either one or the other did. Understood this way, it would not be inconsistent with the jury's findings to allow the State to again argue at Jefferson's retrial that either Jefferson or Brownlee shot Gosa.

¶ 48    Other courts have reached a similar conclusion. In *People v. Santamaria*, 884 P.2d 81, 82 (Cal. 1994), the defendant was tried before a jury for murder and robbery. A codefendant pled guilty to being an accessory to the murder and testified at trial on behalf of the prosecution. At the close of trial, the jury found the defendant guilty of the charged offenses but also found "not true" the allegation that he personally used a knife during the commission of the crimes. *Id.* On appeal, the defendant's convictions were reversed for reasons unrelated to the "not true" finding. *Id.* On remand, the defendant moved, based on *Ashe* and the issue preclusion doctrine of the double jeopardy clause, to prohibit the prosecution from retrying him on the theory that

he personally used the knife during the killing. *Id.* The trial court granted the motion, and the appellate court affirmed. *Id.* at 82-83. However, the Supreme Court of California reversed. Concluding that principles of collateral estoppel or issue preclusion did not bar the prosecution from again arguing that the defendant killed the victim with the knife, the court stated:

> "Not only is there no unanimity requirement as to the theory of guilt, the individual jurors themselves need not choose among the theories, so long as each is convinced of guilt. Sometimes, as probably occurred here, the jury simply cannot decide beyond a reasonable doubt exactly who did what. There may be a reasonable doubt that the defendant was the direct perpetrator, and a similar doubt that he was the aider and abettor, but no such doubt that he was one or the other.
>
> \*\*\*
>
> \*\*\* [T]he jury here may not have been able to decide beyond a reasonable doubt whether defendant or [his codefendant] actually wielded the knife, but was convinced beyond a reasonable doubt that, either way, defendant was guilty of [the victim's] murder. To go further and conclude that the jury *specifically* found defendant did not use the knife would not apply the collateral estoppel rule with 'realism and rationality.' (*Ashe*, *supra*, 397 U.S. at p. 444, 90 S.Ct. at p. 1194.)
>
> \*\*\* Whether defendant specifically used a knife is one question; we may assume the prosecution did not prove that beyond a reasonable doubt, which explains the not true enhancement verdict. Whether defendant committed murder by either using a knife or aiding and abetting the one who did is quite a different question; the prosecution *did* prove that to the jury's satisfaction.
>
> \*\*\* [W]e conclude the jury did not ' "necessarily decide[ ]" ' [citations] that defendant was the aider and abettor, only that it had doubts as to his exact role. Defendant has the burden of showing that the issue he seeks to foreclose was actually decided by the jury. [Citation.] This he cannot do." (Emphases in original.) *Id.* at 89-90.

See *Santamaria v. Horsley*, 133 F.3d 1242, 1244 (9th Cir. 1998) (*en banc*).

¶ 49    In addition to the foregoing, other considerations also counsel against giving preclusive effect to a jury's answer to a special interrogatory under the circumstances present here. For example, assume that, in this case, Brownlee had not died but had instead been prosecuted along with Jefferson for Gosa's murder. Assume further that the jury returned general verdicts finding each defendant guilty of murder and, in addition, answered special interrogatories indicating that the State had failed to prove beyond a reasonable doubt that either defendant personally discharged the weapon that killed Gosa. In this example, there would be no inconsistency between the general verdicts and the answers to the special interrogatories. The jury might not have known beyond a reasonable doubt who fired the fatal shot, but it would have known that one of the defendants did, and since each defendant was accountable for the other, they could each be found guilty of the murder.

¶ 50    Now assume that, on appeal, the defendants' convictions were reversed for reasons unrelated to the answers to the special interrogatories. If the answers were given preclusive effect in a retrial, the State would be barred from arguing that either Jefferson or Brownlee shot the victim. The State could not prosecute the murder case against either defendant even though there would be no question that one or the other shot the victim. This is an absurd result

and serves to underscore why the jury's answer to the special interrogatory cannot be given the preclusive effect advanced by Jefferson here. See *Santamaria*, 884 P.2d at 90 n.9.

¶ 51 In addition to suppressing evidence, the trial court's order in this case also stated that the jury could be "instructed that there was insufficient evidence that proof exists beyond a reasonable doubt that [Jefferson] was armed with a firearm and personally discharged the firearm that proximately caused the death of Marcus Gosa." In *Santamaria*, the Supreme Court of California rejected the necessity of a similar instruction, stating:

> "The jury returns a verdict of guilt or innocence of the *charge*, not a verdict on any particular theory. Although knife use is an ultimate fact of one possible *theory*, that is not the test; knife use is not an ultimate fact of the charge of murder, the only question the jury has to decide. It would be absurd, and would only confuse the jury, to instruct that it could convict defendant if it thought him guilty on some valid theory, even if uncertain which, but could not convict him if it specifically believed he used the knife." (Emphases in original.) *Id.* at 91 n.10.

We agree with the foregoing reasoning and conclude that the trial court's proposed instruction is inappropriate and should not be given.

¶ 52 In this case, Jefferson seeks to foreclose the State from arguing or presenting evidence in his retrial that he "acted as the principal in the murder" of Gosa because the jury in the previous trial made a factual determination that Brownlee rather than Jefferson fired the fatal shot. However, as we have explained, the jury's answer to the special interrogatory and general verdict may also be understood as an indication that the jury was unable to determine whether Jefferson or Brownlee shot Gosa but that it had determined, beyond a reasonable doubt, that either one or the other did. Because a rational jury in this case " 'could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration' " (*Ashe*, 397 U.S. at 444 (quoting Daniel K. Mayers & Fletcher L. Yarbrough, Bis Vexari*: New Trials and Successive Prosecutions*, 74 Harv. L. Rev. 1, 39 (1960))), Jefferson has failed to establish that the doctrine of issue preclusion applies here. We conclude, therefore, that the trial court erred in granting Jefferson's motion to suppress evidence. The State, on retrial, is not barred from again arguing that either Jefferson or Brownlee shot Gosa. The State is barred, however, from seeking a sentence enhancement on remand, as the State has conceded that Jefferson "cannot get the enhancement ever again."

¶ 53                                    CONCLUSION

¶ 54 For the foregoing reasons, the judgment of the appellate court is affirmed. The judgment of the trial court ordering the suppression of evidence is reversed.

¶ 55 Appellate court judgment affirmed.

¶ 56 Circuit court judgment reversed.